## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, <br><br> Plaintiff <br><br> v. <br><br> MOTEL MANAGEMENT SERVICES INC. d/b/a NESHAMINY INN, *et al.*, <br><br> Defendants | Civil Action No. 2:20-cv-1607-CMR |

### FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Nautilus Insurance Company ("Nautilus") hereby files a First Amended Complaint for Declaratory Judgment against Defendants, Motel Management Services Inc. d/b/a Neshaminy Inn, Mary Etzrodt Trust, and NI45 LLC (collectively, "Neshaminy Inn"), and Defendants, G.D. and N.Z., and, for support, alleges the following:

### I.      INTRODUCTION

1.      Nautilus seeks a declaration that it has no duty to defend or indemnify Neshaminy Inn under several commercial general liability insurance policies which Nautilus issued to Neshaminy Inn (collectively, "Nautilus Policies"), in connection with two virtually identical underlying civil actions, styled *G.D. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and *N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642 (collectively, "Underlying Actions").

2.      Nautilus also seeks a declaration that, because it has no duty to defend or indemnify Neshaminy Inn, Nautilus may withdraw the defense it heretofore has provided to Neshaminy Inn

in the Underlying Actions, which is subject to a reservation of rights including the right to withdraw from Neshaminy Inn's defense.

3.    In the Underlying Actions, G.D. and N.Z. seek damages because of alleged bodily injuries arising out of various alleged assaults and/or batteries, including sex-related assaults, which G.D. and N.Z. allegedly experienced during the month of January 2015 while being "sex trafficked, sexually exploited and victimized repeatedly at the Neshaminy Inn Motel."   G.D. Second Am. Compl. ¶ 36; N.Z. Second Am. Compl. ¶ 36.

4.    G.D. and N.Z. — allegedly two of "the thousands of victims of human trafficking being victimized in hotels/motels across the United States" — claim in the Underlying Actions that they "suffer[ed] serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises of the Neshaminy Inn," and were "sexually assaulted and exploited while on the premises of the Neshaminy Inn, causing severe injuries . . . including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future." G.D. Second Am. Compl. ¶¶ 9; 157; 195; N.Z. Second Am. Compl. ¶¶ 9; 157; 195.

5.    G.D. and N.Z. describe additional assault- and/or battery-related injuries they allegedly suffered while being trafficked and exploited, like being "forced to take crack cocaine" and " 'shot up' with heroin" while at the Neshaminy Inn premises.  G.D. Second Am. Compl. ¶ 78; N.Z. Second Am. Compl. ¶ 78.

6.    G.D. and N.Z. claim that Neshaminy Inn is liable for compensatory and punitive damages because of G.D.'s and N.Z.'s alleged assault- and/or battery-related injuries, based on Neshaminy Inn's alleged violations of the Pennsylvania Human Trafficking Law, 18 PA.C.S.A. § 3001 *et seq.*, and alleged breaches of alleged common-law duties of care, such as a "duty to

provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons lawfully on the premises" of Neshaminy Inn.  G.D. Second Am. Compl. ¶¶ 122-28; 153; N.Z. Second Am. Compl. ¶¶ 122-28; 153.

7.       For a variety of reasons, the Nautilus Policies do not provide coverage, including a defense, for the damages G.D. and N.Z. seek to impose against Neshaminy Inn in the Underlying Actions.

8.       Regardless of any other policy language, some of which is discussed in more detail below, the Nautilus Policies' endorsement, EXCLUSION-ALL ASSAULT AND BATTERY ("Assault and Battery Exclusion"), precludes all coverage, including a defense, for the damages sought in the Underlying Actions.

9.       The Assault and Battery Exclusion states that the insurance "does not apply to 'bodily injury' " or " 'personal and advertising injury' " "arising out of any . . . [a]ctual or alleged assault or battery," or "[a]ny act or omission in connection with the prevention of suppression of such acts, including the alleged failure to provide adequate security. . . ."

10.      The Assault and Battery Exclusion applies regardless of who caused the excluded damages, and "applies to . . . [a]ll causes of action arising out of any assault or battery, . . . including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery. . . ."

11.      Based on a comparison of the allegations in the Underlying Actions and the language of the Nautilus Policies, including the Assault and Battery Exclusion, the Nautilus Policies do not provide coverage, including a defense, for the damages G.D. and N.Z. seek to impose against Neshaminy Inn in the Underlying Actions.

12.     All of the damages sought in the Underlying Actions arise out of either alleged assaults and/or batteries or alleged acts and/or omissions in connection with the prevention or suppression of such assaults and/or batteries.

13.     As such, Nautilus has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn in connection with any damages sought in the Underlying Actions.

14.     Coverage may be further excluded and/or limited for other reasons discussed below, including that some or all of G.D.'s and N.Z.'s alleged damages are not for injuries caused by an "occurrence" or an "offense," as those terms are defined in the Nautilus Policies, or may otherwise be excluded by other exclusions in the Nautilus Policies, and/or that allowing Neshaminy Inn to collect insurance for all or part of G.D.'s and N.Z.'s alleged damages would violate public policy.

15.     Accordingly, Nautilus is entitled to a declaration that it has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn in connection with any damages sought in the Underlying Actions.

16.     Nautilus also is entitled to a declaration that, because it has no duty to defend Neshaminy Inn in connection with any damages sought in the Underlying Actions, Nautilus may withdraw the defense it heretofore has provided Neshaminy Inn in the Underlying Actions.

## II.     <u>PARTIES</u>

17.     Nautilus is a corporation that is incorporated in the State of Arizona and maintains its principal place of business at 7233 East Butherus Drive, Scottsdale, Arizona 85260.

18.     Upon information and belief, Motel Management Services Inc. is a corporation organized and existing under the laws of Pennsylvania and maintains its principal place of business in the Commonwealth of Pennsylvania.

4

19.     Upon information and belief, Mary Etzrodt Trust is either (a) a traditional trust whose trustees are domiciled in either the Commonwealth of Pennsylvania (or another state that is <u>not</u> Arizona), or (b) a business-entity trust whose beneficiaries are domiciled in the Commonwealth of Pennsylvania (or another state that is <u>not</u> Arizona).

20.     Upon information and belief, NI45 LLC is a limited liability company whose members are citizens of the Commonwealth of Pennsylvania (or another state that is <u>not</u> Arizona), by virtue of maintaining their domicile and/or principal place of business in the Commonwealth of Pennsylvania (or another state that is <u>not</u> Arizona).

21.     Upon information and belief, G.D. is a natural person who is domiciled in the Commonwealth of Pennsylvania.

22.     Upon information and belief, N.Z. is a natural person who is domiciled in the Commonwealth of Pennsylvania.

## III.     <u>JURISDICTION</u>

23.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

24.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because the value of the Nautilus Policies under which Motel Management Services Inc., Mary Etzrodt Trust, and/or NI45 LLC seek a defense and/or indemnification from Nautilus exceeds $75,000; the cost of defense Nautilus is providing those organizations would, if Nautilus is obligated to continue that defense, exceeds $75,000; and/or the damages awarded in successful trials and/or in settlement of the Underlying Actions would, individually or collectively, exceed $75,000.

25.     The matter is between citizens of different states.

26.     Nautilus is a citizen of Arizona, where it is incorporated and maintains its principal place of business.

27.     Motel Management Services Inc. is a citizen of Pennsylvania, the state in which it was incorporated and/or maintains its principal place of business.

28.     Mary Etzrodt Trust is a citizen of Pennsylvania, the state in which its trustees and/or beneficiaries are domiciled.

29.     NI45 LLC is a citizen of Pennsylvania, the state in which its members are domiciled and/or maintain their principal place of business.

30.     G.D. is a citizen of Pennsylvania, the state in which she is domiciled.

31.     N.Z. is a citizen of Pennsylvania, the state in which she is domiciled.

32.     This Court also has jurisdiction of this matter pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

33.     Jurisdiction under 28 U.S.C. § 2201(a) attaches because Motel Management Services Inc., Mary Etzrodt Trust, and/or NI45 LLC seek a defense and indemnification under the Nautilus Policies, in connection with G.D.'s and N.Z.'s claims against Motel Management Services Inc., Mary Etzrodt Trust, and/or NI45 LLC in the Underlying Action; and Nautilus disputes that it owes those organizations duties under the Nautilus Policies to defend and indemnify them in connection with the Underlying Action.

## IV.   <u>VENUE</u>

34.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

35.     Venue is proper in the Eastern District of Pennsylvania pursuant to § 1391(b)(1) because Motel Management Services Inc., Mary Etzrodt Trust, NI45 LLC, G.D., and/or N.Z. reside in the Eastern District of Pennsylvania and all are residents of the Commonwealth of Pennsylvania.

36.     Venue is also proper in the Eastern District of Pennsylvania pursuant to § 1391(b)(2) because a substantial part of the events or omissions giving rise to Nautilus's claims occurred in the Eastern District of Pennsylvania.

37.     A substantial part of the events or omissions giving rise to Nautilus's claims occurred in the Eastern District of Pennsylvania because the underlying injuries, the underlying trials, the defense Nautilus is providing Motel Management Services Inc., Mary Etzrodt Trust, and NI45 LLC, from which Nautilus seeks to withdraw, and the underlying judgments, if any, which Nautilus claims are not covered under the Nautilus Policies, occurred and/or are still occurring in either Bucks County or Philadelphia County, or both, which the Eastern District of Pennsylvania encompasses.

38.     The underlying injuries, damages for which Motel Management Services Inc., Mary Etzrodt Trust, and/or NI45 LLC seek indemnification under the Nautilus Policies, occurred in the Eastern District of Pennsylvania because G.D. and N.Z. allegedly sustained bodily injuries and other harm at a premises identified in the Underlying Actions as 2345 Old Lincoln Highway, Trevose, Bucks County, Pennsylvania 19053, which the Eastern District of Pennsylvania encompasses.

39.     The Underlying Actions, including the trials of those actions, for which Nautilus is providing a defense for Motel Management Services Inc., Mary Etzrodt Trust, and NI45 LLC, are

pending in the Philadelphia County Common Pleas Court, which the Eastern District of Pennsylvania encompasses.

40. The underlying judgments, if any, for which Motel Management Services Inc., Mary Etzrodt Trust, and/or NI45 LLC seek indemnification under the Nautilus Policies, will be imposed, if ever, by the Philadelphia County Common Pleas Court, which the Eastern District of Pennsylvania encompasses.

## V.   **FACTUAL BACKGROUND**

### A.   **The Underlying Actions**

41. On or about January 2, 2020, G.D. and N.Z. filed separate complaints against Motel Management Services Inc. d/b/a Neshaminy Inn, Mary Etzrodt Trust, NI45 LLC (collectively, "Neshaminy Inn"), and others, in virtually identical civil actions captioned *G.D. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and *N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642 (collectively, "Underlying Actions").

42. On or about February 20, 2020, G.D. and N.Z. filed separate first amended complaints in the Underlying Actions.

43. Later, on or about March 31, 2020, G.D. and N.Z. filed separate second amended complaints in the Underlying Actions.

44. A true and correct copy of G.D.'s Second Amended Complaint is attached as Exhibit "A."

45. A true and correct copy of N.Z.'s Second Amended Complaint is attached as Exhibit "B."

46.     G.D.'s and N.Z.'s complaints ("Complaints") allege that they are two of "the thousands of victims of human trafficking being victimized in hotels / motels across the United States."  G.D. Second Am. Compl. ¶ 9; N.Z. Second Am. Compl. ¶ 9.

47.     According to the Complaints, G.D. and N.Z. met an individual, Paul Branham, in "January of 2015" through a mobile dating app, "Plenty of Fish."  G.D. Second Am. Compl. ¶ 68; N.Z. Second Am. Compl. ¶ 68.

48.     Branham, the Complaints allege, pleaded guilty in "August 2015" to "felony charges relating to the trafficking of [G.D. and N.Z.] at the Neshaminy Inn. . . ."  G.D. Second Am. Compl. ¶ 49; N.Z. Second Am. Compl. ¶ 49.

49.     The Complaints further allege that, "through the course of their relationship," Branham "proceeded to exploit [G.D. and N.Z.] by using alcohol and drugs to exploit and manipulate them, before he eventually recruited, enticed, solicited, harbored and/or transported [G.D. and N.Z.] to engage in commercial sex acts at the . . . Neshaminy Inn . . . ."  G.D. Second Am. Compl. ¶ 68; N.Z. Second Am. Compl. ¶ 68.

50.     The Complaints allege that G.D. and N.Z. "engaged in numerous commercial sex act 'dates' per day at the . . . Neshaminy Inn," during which the "trafficker would leave the room but remain on the premises," and after which G.D. and N.Z. would hand over to their trafficker the cash they received for such sex acts.  G.D. Second Am. Compl. ¶¶ 74-75; 81-82; N.Z. Second Am. Compl. ¶¶ 74-75; 81-82.

51.     According to the Complaints, G.D. and N.Z. were "visibly treated in an aggressive manner by [their] trafficker while [G.D. and N.Z.] [were] trafficked out of the . . . Neshaminy Inn. . . ."  G.D. Second Am. Compl. ¶ 77; N.Z. Second Am. Compl. ¶ 77.

9

52.     G.D. and N.Z., the Complaints allege, "exhibited fear, anxiety and displayed signs of impairment while on the premises and in public areas of the . . . Neshaminy Inn . . . ."  G.D. Second Am. Compl. ¶ 78; N.Z. Second Am. Compl. ¶ 78.

53.     In addition to being trafficked to engage in commercial sex acts, the Complaints allege that G.D. and N.Z. were "forced to take crack cocaine between dates and [were] 'shot up' with heroin while at the . . . Neshaminy Inn. . . ."  G.D. Second Am. Compl. ¶ 78; N.Z. Second Am. Compl. ¶ 78.

54.     The Complaints allege that the police "rescued" G.D. and N.Z. from their trafficker on "January 31, 2015."  G.D. Second Am. Compl. ¶ 83; N.Z. Second Am. Compl. ¶ 83.

55.     Neshaminy Inn, the Complaints assert, "regularly rented or otherwise provided rooms and services at the Neshaminy Inn to traffickers engaged in commercial sex acts with [G.D. and N.Z.]"  G.D. Second Am. Compl. ¶ 66; N.Z. Second Am. Compl. ¶ 66.

56.     The Complaints allege that Neshaminy Inn "ha[s] been on notice of repeated incidences of criminal activity, including sex trafficking . . . but failed to take the necessary steps to prevent sex trafficking."  G.D. Second Am. Compl. ¶ 84; N.Z. Second Am. Compl. ¶ 84.

57.     The Complaints allege that Neshaminy Inn owed a duty to G.D. and N.Z. "to exercise reasonable care to protect against criminal conduct" on it premises.  G.D. Second Am. Compl. ¶ 104; N.Z. Second Am. Compl. ¶ 104.

58.     "Despite actual knowledge, constructive knowledge and general awareness of the signs of human trafficking," the Complaints allege, Neshaminy Inn "failed to report to authorities, intervene, disrupt or otherwise stop the human sex trafficking of [G.D. and N.Z.]," which allegedly caused G.D. and N.Z. "to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life, and loss of life's pleasures both in the

past and in the future."  G.D. Second Am. Compl. ¶¶ 107; 110; N.Z. Second Am. Compl. ¶¶ 107; 110.

59.     The Complaints further allege that Neshaminy Inn "acted outrageously and in reckless disregard for the health and welfare of [G.D. and N.Z.] warranting the imposition of punitive damages."  G.D. Second Am. Compl. ¶ 113; N.Z. Second Am. Compl. ¶ 113.

60.     Based on the allegations above and others in the Complaints, G.D. and N.Z. assert four claims against Neshaminy Inn: (1) "Civil Liability Under The Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3051"; (2) "Negligence"; (3) "Negligent Infliction Of Emotional Distress"; and (4) "Negligent Hiring, Training, And/Or Supervision."

61.     Count II of the Complaints, setting forth the Human Trafficking Law claim, alleges that Neshaminy Inn "knew that they were renting rooms to the individual sex trafficking [G.D. and N.Z.], which resulted in [them] being sex trafficked and sexually exploited."  G.D. Second Am. Compl. ¶ 124; N.Z. Second Am. Compl. ¶ 124.

62.     The Complaints also allege in Count II that Neshaminy Inn "caused [G.D. and N.Z.] to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future."  G.D. Second Am. Compl. ¶ 126; N.Z. Second Am. Compl. ¶ 126.

63.     The Complaints further allege in Count II that Neshaminy Inn "failed to report, intervene, disrupt or otherwise stop sex trafficking" on its premises, and "acted outrageously and in reckless disregard for the health and welfare of [G.D. and N.Z.] warranting an imposition of punitive damages.  G.D. Second Am. Compl. ¶¶ 127-28; N.Z. Second Am. Compl. ¶¶ 127-28.

64.     Each successive Count in the Complaints against Neshaminy Inn incorporates by reference the factual-background and Human-Trafficking-Law allegations summarized above, as

though set forth in each successive Count.  G.D. Second Am. Compl. ¶¶ 152; 177; 190; N.Z. Second Am. Compl. ¶¶ 152; 177; 190.

65.     In Count VI, incorporating all prior allegations and setting forth a Negligence claim, G.D. and N.Z. allege that Neshaminy Inn breached various common-law duties to "provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons" on its premises; to "take precautions against reasonably anticipated criminal conduct by third parties and to operate the Neshaminy Inn in a manner that did not endanger children or other persons, including [G.D. and N.Z.]"; and to "take reasonable steps to protect foreseeable victims of the dangers created by their acts and omissions, including the danger of human trafficking and sexual exploitation" on its premises.  G.D. Second Am. Compl. ¶¶ 153; 155; N.Z. Second Am. Compl. ¶¶ 153; 155.

66.     Neshaminy Inn breached those duties, the Complaints assert in Count VI, because Neshaminy Inn "knew, or should have known, that persons lawfully on the premises of the Neshaminy Inn, such as [G.D. and N.Z.], could be victimized by, or subjected to, criminal activities on the premises that would likely endanger their health, safety, and/or well-being"; and because it "knew, or should have known, that adults working as sex traffickers were causing, by any means, persons, including [G.D. and N.Z.], to be sexually exploited and trafficked at the Neshaminy Inn on a repeated basis."  G.D. Second Am. Compl. ¶ 156; N.Z. Second Am. Compl. ¶ 156.

67.     G.D. and N.Z. "suffer[ed] serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises of the Neshaminy Inn," according to the Complaints in Count VI.  G.D. Second Am. Compl. ¶ 157; N.Z. Second Am. Compl. ¶ 157.

68.     The Complaints also assert in Count VI that Neshaminy Inn "failed or refused to take adequate precautions to protect persons on the premises of the Neshaminy Inn, including

[G.D. and N.Z.], from criminal and violent activities of others, despite a reasonable likelihood that person[s] on the premises of the Neshaminy Inn, including [G.D. and N.Z.], would be victimized by, or subjected to, such criminal and/or violent acts, which could cause such persons serious bodily injury."  G.D. Second Am. Compl. ¶ 158; N.Z. Second Am. Compl. ¶ 158.

69.     Count VI, incorporating all prior allegations, describes various alleged failures related to the security and surveillance of, and protection of persons at, the Neshaminy Inn premises, as well as alleged failures related to the hiring, training, and supervision of individuals working at the Neshaminy Inn premises.  G.D. Second Am. Compl. ¶¶ 158(a)-(x); N.Z. Second Am. Compl. ¶¶ 158(a)-(x).

70.     In Count IX, incorporating all prior allegations and setting forth a Negligent Infliction Of Emotional Distress claim, G.D. and N.Z. allege that, as a result of the acts and/or omissions of Neshaminy Inn described elsewhere in the Complaints, G.D. and N.Z. suffered "fear, depression, humiliation, mental anguish and severe physical and emotional distress, directly and proximately causing harm and damages" to G.D. and N.Z.  G.D. Second Am. Compl. ¶ 178; N.Z. Second Am. Compl. ¶ 178.

71.     Finally, in Count XII, which incorporates all prior allegations and sets forth a Negligent Hiring, Training, And/Or Supervision claim, the Complaints assert negligent failures of Neshaminy Inn, similar to those alleged in Count VI (Negligence), which directly and proximately resulted in G.D. and N.Z. being "sexually assaulted and exploited while on the premises of the Neshaminy Inn, causing severe injuries to [G.D. and N.Z.] including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future."  G.D. Second Am. Compl. ¶¶ 191-96; N.Z. Second Am. Compl. ¶¶ 191-96.

72.     For relief, the Complaints seek a judgment against Neshaminy Inn for both compensatory and punitive damages.

**B.     The Nautilus Policies**

73.     Nautilus issued to Motel Management Services Inc. d/b/a Neshaminy Inn three commercial general liability insurance policies (collectively, the "Nautilus Policies"), effective for the successive periods of September 1, 2014 to September 1, 2015 (No. NN433648); September 1, 2015 to September 1, 2016 (No. NN580317); and September 1, 2016 to September 1, 2017 (No. NN711835).

74.     A copy of Policy No. NN433648, numbered NAUTILUS_000001–58, is attached as Exhibit "C."

75.     A copy of Policy No. NN580317, numbered NAUTILUS_000059–119, is attached as Exhibit "D."

76.     A copy of Policy No. NN711835, numbered NAUTILUS_000120–176, is attached as Exhibit "E."

77.     The Nautilus Policies each provide certain coverage, subject to a $1,000,000 each-occurrence limit and a $2,000,000 general-aggregate limit.

78.     The Nautilus Policies contain a SCHEDULE OF NAMED INSUREDS endorsement, which makes "Mary Etzrodt Trust" and "NI45 LLC" additional named insureds under the Nautilus Policies.

79.     The Nautilus Policies provide certain commercial general liability insurance pursuant to form CG 00 01 12 04, which states in pertinent part the following:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a

Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      Insuring Agreement

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            (1)      The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

            (2)      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

            No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

      b.      This insurance applies to "bodily injury" and "property damage" only if:

            (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            (2)      The "bodily injury" or "property damage" occurs during the policy period; and

            (3)      Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee"

authorized by you to give or receive notice of an "oc-currence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.      "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

\* \* \*

2.      Exclusions

This insurance does not apply to:

a.      Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

o.      Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

\* \* \*

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.      Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any

16

"suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.     Exclusions

This insurance does not apply to:

\*   \*   \*

a.     Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\*   \*   \*

d.     Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

\*   \*   \*

SECTION V – DEFINITIONS

\*   \*   \*

3.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.   False arrest, detention or imprisonment;

\* \* \*

(Ex. C, NAUTILUS_000011–25; Ex. D, NAUTILUS_000069–83; Ex. E, NAUTILUS_000130–144).

80.   The Nautilus Policies contain an endorsement, EXCLUSION-ALL ASSAULT AND BATTERY, which states the following:

A.   The following exclusion is added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability, and Coverage C - Medical Payments:

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

1.   Actual or alleged assault or battery;

2.   Physical altercation; or

3.   Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

1.   Insured;

2.   "Employee";

3.   Patron; or

4.   Any other person; and

18

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

1.      All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

2.      Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

      a.      Emotional distress for loss of society, services, consortium or income; or

      b.      Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

3.      Any obligation to share damages with or repay someone who must pay damages because of the injury.

B.      We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

(Ex. C, NAUTILUS_000035; Ex. D, NAUTILUS_000097; Ex. E, NAUTILUS_000156).

81.     The Nautilus Policies contain an endorsement, "EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES," which excludes from coverage punitive or exemplary damages. (Ex. C, NAUTILUS_000037; Ex. D, NAUTILUS_000099; Ex. E, NAUTILUS_000158).

C.      **Nautilus's Defense Of Neshaminy Inn In The Underlying Actions**

82.     Neshaminy Inn requested that Nautilus defend and indemnify Neshaminy Inn under the Nautilus Policies, in connection with the Underlying Actions.

83.     In response, Nautilus informed Neshaminy Inn that Nautilus believed that the Nautilus Policies do not provide coverage, including a defense, for the damages sought in the Underlying Actions.

84.     However, even though the Nautilus Policies do not provide coverage for the damages sought in the Underlying Actions, Nautilus nevertheless offered to provide Neshaminy Inn a defense in the Underlying Actions, by and through counsel assigned by Nautilus.

85.     As part of its offer of a defense to Neshaminy Inn, Nautilus reserved all rights under the Nautilus Policies to, *inter alia*, deny or limit coverage, including to seek a declaration regarding Nautilus's obligations, if any, under the Nautilus Policies, and to seek a declaration that Nautilus may withdraw from the defense of Neshaminy Inn, in connection with the Underlying Actions.

86.     Neshaminy Inn has accepted Nautilus's offer of a defense by and through by and through counsel assigned by Nautilus, subject to Nautilus's reservation of rights.

87.     As of the time this complaint is being filed, Nautilus is continuing to defend Neshaminy Inn in the Underlying Actions, by and through counsel assigned by Nautilus, subject to a reservation of rights.

## COUNT ONE

## DECLARATORY JUDGMENT

## NAUTILUS HAS NO DUTY UNDER POLICY NO. NN580317 AND POLICY NO. NN711835 TO DEFEND OR INDEMNIFY NESHAMINY INN IN THE UNDERLYING ACTIONS

88.     Nautilus incorporates by reference all of the foregoing allegations as though the same were set forth here.

89.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, Nautilus is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the Nautilus Policies in connection with the Underlying Actions.

90.     Nautilus has no duty under Policy No. 580317 and Policy No. 711835 to defend or indemnify Neshaminy Inn — *i.e.*, Motel Management Services Inc. d/b/a Neshaminy Inn, Mary Etzrodt Trust, and NI45 LLC — against the damages sought against Neshaminy Inn in the Underlying Actions.   Neshaminy Inn admitted this allegation in Neshaminy Inn's answer to Nautilus's original complaint.  *See* Neshaminy Inn Answer to Nautilus Complaint (Doc. 13), ¶ 88.

91.     The Nautilus Policies state, in SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, that Nautilus will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which [the] insurance applies," except that Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which the insurance does not apply." (Ex. C, NAUTILUS_000011; Ex. D, NAUTILUS_000069; Ex. E, NAUTILUS_000130).

92.     The Nautilus Policies also state, in SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, that the insurance applies to bodily injury "only if," among other things, "[t]he 'bodily injury' . . . occurs during the policy period[.]" (Ex. C, NAUTILUS_000011; Ex. D, NAUTILUS_000069; Ex. E, NAUTILUS_000130).

93.     The Nautilus Policies state, in SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, that Nautilus will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which [the] insurance applies," except that Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which [the] insurance does not apply."  (Ex. C, NAUTILUS_000015; Ex. D, NAUTILUS_000073; Ex. E, NAUTILUS_000134).

94.     The Nautilus Policies also state, in SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, that the insurance applies to personal and advertising injury "caused by an offense arising out of your business but only if," among other things, "the offense was committed . . . during the policy period."  (Ex. C, NAUTILUS_000016; Ex. D, NAUTILUS_000074; Ex. E, NAUTILUS_000135).

95.     The term "personal and advertising injury" is defined in the Nautilus Policies as "injury, including consequential 'bodily injury', arising out of one or more of" various "offenses," including "[f]alse arrest, detention or imprisonment[.]"  (Ex. C, NAUTILUS_000024; Ex. D, NAUTILUS_000082; Ex. E, NAUTILUS_000143).

96.     The Underlying Actions allege that G.D. and N.Z. sustained bodily injuries, as victims of human trafficking, from the time they met their trafficker in "January of 2015" to the time they were both "rescued from [their] trafficker" by the police on "January 31, 2015."

97.     Based on the foregoing, G.D.'s and N.Z.'s alleged bodily injuries occurred during the policy period of Policy No. NN433648, effective September 1, 2014 to September 1, 2015, because the injuries allegedly occurred only during the month of January 2015, which falls within the policy period of Policy No. NN433648.  Neshaminy Inn admitted this allegation in Neshaminy Inn's answer to Nautilus's original complaint.  *See* Neshaminy Inn Answer to Nautilus Complaint (Doc. 13), ¶ 95.

98.     The Underlying Actions do not allege that any bodily injuries allegedly sustained by G.D. and/or N.Z. occurred during the policy period of either Policy No. 580317 (September 1, 2015 to September 1, 2016) or Policy No. 711835 (September 1, 2016 to September 1, 2017). Neshaminy Inn admitted this fact in Neshaminy Inn's answer to Nautilus's original complaint.  *See* Neshaminy Inn Answer to Nautilus Complaint (Doc. 13), ¶ 96.

99.     The Underlying Actions also do not allege that a "[f]alse arrest, detention or imprisonment" was committed, if even at all, during the policy period of either Policy No. 580317 (September 1, 2015 to September 1, 2016) or Policy No. 711835 (September 1, 2016 to September 1, 2017).  Neshaminy Inn admitted this fact in Neshaminy Inn's answer to Nautilus's original complaint.  *See* Neshaminy Inn Answer to Nautilus Complaint (Doc. 13), ¶ 97.

100.    Thus, regardless of the other language of the Nautilus Policies, discussed in more detail below, the insurance under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of Policy No. 580317 and Policy No. 711835 does not apply to the damages sought in the Underlying Actions.

101.    Nautilus thus does not owe Neshaminy Inn a duty, under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of either Policy No. 580317 or Policy No. 711835, to defend or indemnify Neshaminy Inn in connection with the Underlying Actions.

102.    Further, regardless of the other language of the Nautilus Policies, discussed in more detail below, the insurance under SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of Policy No. 580317 and Policy No. 711835 also does not apply to the damages sought in the Underlying Actions.

103.    Nautilus does thus not owe Neshaminy Inn at duty, under SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of either Policy No. 580317 or Policy No. 711835, to defend or indemnify Neshaminy Inn in connection with the Underlying Actions.

104.    Nautilus is entitled to a declaration that it has no duty under Policy No. 580317 and Policy No. 711835 to defend or indemnify Neshaminy Inn in connection with any damages sought in the Underlying Actions.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

    (a)    Declaring that, under Policy No. 580317 and Policy No. 711835, Nautilus has no duty to defend or indemnify Neshaminy Inn in the Underlying Actions; and

    (b)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT TWO

## DECLARATORY JUDGMENT

## NAUTILUS HAS NO DUTY UNDER THE NAUTILUS POLICIES TO DEFEND OR INDEMNIFY NESHAMINY INN IN THE UNDERLYING ACTIONS

105.    Nautilus incorporates by reference all of the foregoing allegations as though the same were set forth here.

106.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, Nautilus is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the Nautilus Policies in connection with the Underlying Actions.

107.    Nautilus has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn — *i.e.*, Motel Management Services Inc. d/b/a Neshaminy Inn, Mary Etzrodt Trust, and NI45 LLC — against the damages sought against Neshaminy Inn in the Underlying Actions.

108.    The insurance under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Nautilus Policies applies only if, among other things, bodily injury is caused by "occurrence," which the Nautilus Policies define as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   (Ex. C, NAUTILUS_000011, -24; Ex. D, NAUTILUS_000069, -82; Ex. E, NAUTILUS_000130, -143).

109.    In Count II, setting forth a claim under the Human Trafficking Law, the Complaints allege that Neshaminy Inn "knew that they were renting rooms to the individual sex trafficking [G.D. and N.Z.], which resulted in [them] being sex trafficked and sexually exploited," which allegedly caused G.D. and N.Z. to sustain bodily injuries.  G.D. Second Am. Compl. ¶ 124; 126; N.Z. Second Am. Compl. ¶ 124; 126.

110.    Indeed, liability under the Human Trafficking Law, 18 Pa.C.S. § 3051, cannot be imposed absent a showing that an organization either "knowingly" marketed or provided goods or services to a trafficker, "knowingly" received a higher level of compensation from a trafficker, or supervised or exercised control over a trafficker.

111.    Count II of the Complaints thus does not, and cannot, allege an "occurrence," as defined in the Nautilus Policies.

112.    Neshaminy Inn's conduct described in Count II does not constitute an "accident," and thus does not constitute an "occurrence."

113.    To the extent that Count VI (Negligence), Count IX (Negligent Infliction of Emotional Distress), and Count XII (Negligent Hiring, Training, and/or Supervision) of the Complaints incorporate by reference and/or rely upon the allegations in Count II, then Counts VI, IX, and XII of

the Complaints also do not allege an "occurrence" for the same reasons Count II does not allege an "occurrence."

114.    The insurance under SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of the Nautilus Policies applies only to personal and advertising injury "caused by an offense" listed in the definition of "personal and advertising injury," including "[f]alse arrest, detention or imprisonment[.]"

115.    The Complaints do not allege an arrest, detention, or imprisonment of either G.D. or N.Z., and do not allege any other personal and advertising injury offense listed in the Nautilus Policies, whether committed by Neshaminy Inn or otherwise.

116.    Even if the Underlying Actions alleged either "bodily injury" caused by an "occurrence," or "personal and advertising injury" caused by an "offense" (which they do not), coverage for the Underlying Actions nevertheless would be excluded by other language in the Nautilus Policies.

117.    The Nautilus Policies' endorsement, EXCLUSION-ALL ASSAULT AND BATTERY ("Assault and Battery Exclusion"), excludes all coverage, including a defense, for all damages sought in the Underlying Actions.

118.    Neshaminy Inn's alleged liability in the Underlying Actions arises out of an assault or battery and/or an act or omission relating to such an assault and/or battery.

119.    The Complaints in the Underlying Actions allege various forms of assaults and/or batteries by virtue of alleging that G.D. and N.Z. sustained bodily injuries as a result of being "trafficked," in violation of Pennsylvania's Human Trafficking Law, at the Neshaminy Inn premises.

120.    The Complaints also allege other assaults and/or batteries — *e.g.*, that G.D. and N.Z. "suffer[ed] serious bodily harm as a result of being victimized by violent crimes perpetrated by

third parties on the premises of the Neshaminy Inn," and were "sexually assaulted and exploited while on the premises of the Neshaminy Inn, causing severe injuries . . . including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future."  G.D. Second Am. Compl. ¶¶ 157; 195; N.Z. Second Am. Compl. ¶¶ 157; 195.

121.    The Complaints further allege that, in the course of being trafficked, sexually assaulted, and/or exploited at the Neshaminy Inn premises, G.D. and N.Z. were "visibly treated in an aggressive manner," which allegedly caused G.D. and N.Z. to be in "fear" and experience "anxiety."  G.D. Second Am. Compl. ¶¶ 77–78; N.Z. Second Am. Compl. ¶¶ 77–78.

122.    G.D. and N.Z. also allegedly were "forced to take crack cocaine between [sex] dates" and "shot up with heroin" while at the Neshaminy Inn premises, allegedly causing bodily injuries, which constitutes an assault and/or battery.  G.D. Second Am. Compl. ¶ 78; N.Z. Second Am. Compl. ¶ 78.

123.    The Complaints in the Underlying Actions assert that Neshaminy Inn is liable for G.D.'s and N.Z.'s damages based on Neshaminy Inn's alleged violations of the Pennsylvania Human Trafficking Law, 18 PA.C.S.A. § 3001 *et seq.*, and alleged breaches of alleged common-law duties of care, such as a "duty to provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons lawfully on the premises" of Neshaminy Inn.  G.D. Second Am. Compl. ¶¶ 122–28; 153; N.Z. Second Am. Compl. ¶¶ 122–28; 153.

124.    The Complaints also assert, among other things, that Neshaminy Inn "failed or refused to take adequate precautions to protect persons on the premises of the Neshaminy Inn, including [G.D. and N.Z.], from criminal and violent activities of others, despite a reasonable

likelihood that person[s] on the premises of the Neshaminy Inn, including [G.D. and N.Z.], would be victimized by, or subjected to, such criminal and/or violent acts, which could cause such persons serious bodily injury."  G.D. Second Am. Compl. ¶ 156; N.Z. Second Am. Compl. ¶ 156.

125.   The Complaints further allege that G.D. and N.Z. "suffer[ed] serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises of the Neshaminy Inn."  G.D. Second Am. Compl. ¶ 157; N.Z. Second Am. Compl. ¶ 157.

126.   Based on a comparison of the allegations in the Underlying Actions and the language of the Nautilus Policies, including the Assault and Battery Exclusion, the Nautilus Policies do not provide coverage, including a defense, for the damages sought in the Underlying Actions.

127.   The Nautilus Policies' Assault and Battery Exclusion applies to preclude all coverage because all of the damages sought in the Underlying Actions arise out of either alleged assaults and/or batteries or alleged acts and/or omissions in connection with the prevention or suppression of such assaults and/or batteries.

128.   Even if the insurance under the Nautilus Policies applied to the damages sought in the Underlying Actions, and it does not, another endorsement in the Nautilus Policies, EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES, would exclude from coverage any punitive or exemplary damages sought in the Underlying Actions.

129.   Coverage may be further excluded and/or limited for other reasons, including that allowing Neshaminy Inn to collect insurance for all or part of the damages sought in the Underlying Action would violate public policy.  *See Nautilus Ins. Co. v. Motel Mgmt. Servs.*, 320 F. Supp. 3d 636, 643 (E.D. Pa. May 24, 2018) ("Under Pennsylvania law, it is against public policy to insure against claims for intentional torts or criminal acts. . . . As Nautilus points out, financially

benefitting from human sex trafficking is criminalized under the Pennsylvania Human Trafficking Law. . . . Thus, public policy precludes coverage.") (citations omitted).

130.     Coverage also is prohibited or limited to the extent that applicable public policy precludes indemnification for the punitive damages requested in the Underlying Actions.

131.     The Nautilus Policies' other exclusions may further exclude or limit coverage for the damages sought in the Underlying Actions — *e.g.*, the Expected Or Intended Injury and Personal and Advertising Injury exclusions to the insurance under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and the Knowing Violation Of Rights Of Another and Criminal Acts exclusions to the insurance under SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY — based on allegations in the Complaints triggering those exclusions.  (Ex. C, NAUTILUS_000012, -15, -16; Ex. D, NAUTILUS_000070, -73, -74; Ex. E, NAUTILUS_000131, -134, -135).

132.     Accordingly, Nautilus has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn in connection with any damages sought in the Underlying Actions.

133.     Nautilus is entitled to a declaration that it has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn in connection with any damages sought in the Underlying Actions.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)     Declaring that, under the Nautilus Policies, Nautilus has no duty to defend or indemnify Neshaminy Inn in the Underlying Actions; and

(b)     Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available

at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT THREE

## DECLARATORY JUDGMENT

## NAUTILUS MAY WITHDRAW FROM THE DEFENSE OF NESHAMINY INN IN THE UNDERLYING ACTIONS

134.    Nautilus incorporates by reference all of the foregoing allegations as though the same were set forth here.

135.    As set forth above, Nautilus has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn against any of the damages sought against Neshaminy Inn in the Underlying Action.

136.    Because Nautilus has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn in the Underlying Actions, Nautilus is entitled to withdraw the defense it heretofore has provided to Neshaminy Inn, consistent with Nautilus's reservation of rights and applicable law.

137.    Accordingly, Nautilus is entitled to a declaration that, because it has no duty under the Nautilus Policies to defend or indemnify Neshaminy Inn in the Underlying Actions, Nautilus may withdraw the defense it heretofore has provided Neshaminy Inn in the Underlying Actions.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(c)    Declaring that, under the Nautilus Policies, Nautilus has no duty to defend or indemnify Neshaminy Inn in the Underlying Actions;

(d)    Declaring that, because Nautilus has no duty to defend or indemnify Neshaminy Inn in the Underlying Actions, Nautilus is entitled to withdraw

the defense it heretofore has provided Neshaminy Inn in the Underlying

Actions; and

(e)      Declaring and granting such other and further relief as may be necessary

and appropriate under the circumstances, including all other relief available

at law or in equity to which Nautilus may be entitled and which this Court

deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Nautilus hereby demands a trial by jury of issues so triable.

**WHITE AND WILLIAMS LLP**

Dated:      August 5, 2020          BY:      *Anthony L. Miscioscia*
                                              Anthony L. Miscioscia (PA ID # 69215)
                                              Timothy A. Carroll (PA ID # 318907)
                                              1650 Market Street, Suite 1800
                                              Philadelphia, PA 19103-7395
                                              (215) 864 6356/6218
                                              *Attorneys for Plaintiff,*
                                              *Nautilus Insurance Company*