UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>              Plaintiff<br><br>  v.<br><br>MOTEL MANAGEMENT SERVICES INC.<br>d/b/a NESHAMINY INN, *et al.*,<br><br>              Defendants | Civil Action No. 2:20-cv-1607-CMR |

**MOTION FOR JUDGMENT ON THE PLEADINGS OF PLAINTIFF, NAUTILUS INSURANCE COMPANY**

      Plaintiff Nautilus Insurance Company ("Nautilus") by and through its attorneys, White & Williams LLP, hereby moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and in support thereof averse as follows:

**I.    INTRODUCTION**

      1.    This is an action seeking a declaratory judgment to resolve disputes over insurance coverage with regard to whether Nautilus is obligated to defend or indemnify Motel Management Services, Inc., d/b/a Neshaminy Inn, The Mary Etzrodt Real Estate Trust and NI45, LLC ("the Motel Management Defendants"), in connection with two virtually identical underlying civil actions, styled *G.D. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and *N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642 (collectively, "Underlying Actions").

      2.    The Underlying Actions concern claims that in 2015, G.D. and N.Z. were victims of human sex trafficking, which took place when they were trafficked and prostituted at the Neshaminy Inn. The Motel Management Defendants – who are alleged to own, operate and/or manage the

Neshaminy Inn – are alleged to have violated the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3001 *et seq*., by renting rooms to the individual sex trafficking G.D. and N.Z. resulting in their sexual servitude and exploitation and causing them both physical and emotional harm. The Motel Management Defendants are also alleged to have provided inadequate security to protect G.D. and N.Z. from the "criminal and violent acts" to which they were subjected on the Motel Management Defendants' premises.

3. The Motel Management Defendants are seeking to require Nautilus to provide them with a defense and indemnity for such claims.

4. Nautilus, however, does not owe the Motel Management Defendants a defense or indemnity for the Underlying Actions because, among other things, the Underlying Actions do not allege bodily injury caused by an "occurrence", defined in the Policies as an accident, because the All Assault or Battery exclusion precludes all coverage for the Underlying Actions, and because applicable public policy precludes coverage for the claims asserted against the Motel Management Defendants.

5. Coverage also is further precluded under certain of the Nautilus Policies to the extent that no bodily injury or personal or advertising injury offense was committed, or alleged to have been committed, during such Policies' policy period.

## II. FACTUAL BACKGROUND

### A. The Underlying Actions

6. On or about January 2, 2020, G.D. and N.Z. filed separate complaints against Motel Management Services Inc. d/b/a Neshaminy Inn, Mary Etzrodt Trust, NI45 LLC (collectively, "Neshaminy Inn"), and others, in virtually identical civil actions captioned *G.D. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and

3

*N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642 (collectively, "Underlying Actions").

7. On or about February 20, 2020, G.D. and N.Z. filed separate first amended complaints in the Underlying Actions.

8. Later, on or about March 31, 2020, G.D. and N.Z. filed separate second amended complaints in the Underlying Actions.

9. A true and correct copy of G.D.'s Second Amended Complaint is attached as Exhibit A.

10. A true and correct copy of N.Z.'s Second Amended Complaint is attached as Exhibit B.

11. G.D.'s and N.Z.'s complaints ("Complaints") allege that they are two of "the thousands of victims of human trafficking being victimized in hotels / motels across the United States." Exs. A and B at ¶ 9.

12. According to the Complaints, G.D. (a minor) and N.Z. met an individual, Paul Branham, in "January of 2015" through a mobile dating app, "Plenty of Fish." Ex. A at ¶¶ 10, 68; Ex. B at ¶ 68.

13. Branham, the Complaints allege, pleaded guilty in "August 2015" to "felony charges relating to the trafficking of [G.D. and N.Z.] at the Neshaminy Inn. . . ." *Id*. at ¶ 49.

14. The Complaints further allege that, "through the course of their relationship," Branham "proceeded to exploit [G.D. and N.Z.] by using alcohol and drugs to exploit and manipulate them, before he eventually recruited, enticed, solicited, harbored and/or transported [G.D. and N.Z.] to engage in commercial sex acts at the . . . Neshaminy Inn . . . ." *Id*. at ¶ 68.

15. The Complaints allege that G.D. and N.Z. "engaged in numerous commercial sex act 'dates' per day at the . . . Neshaminy Inn," during which the "trafficker would leave the room but remain on the premises," and after which G.D. and N.Z. would hand over to their trafficker the cash they received for such sex acts. *Id*. at ¶¶ 74-75; 81-82.

16. According to the Complaints, G.D. and N.Z. were "visibly treated in an aggressive manner by [their] trafficker while [G.D. and N.Z.] [were] trafficked out of the . . . Neshaminy Inn. . . ." *Id.* at ¶ 77.

17. G.D. and N.Z., the Complaints allege, "exhibited fear, anxiety and displayed signs of impairment while on the premises and in public areas of the . . . Neshaminy Inn . . . ." *Id*. at ¶ 78.

18. In addition to being trafficked to engage in commercial sex acts, the Complaints allege that G.D. and N.Z. were "forced to take crack cocaine between dates and [were] 'shot up' with heroin while at the . . . Neshaminy Inn. . . ." *Id.* at ¶ 78.

19. The Complaints allege that the police "rescued" G.D. and N.Z. from their trafficker on "January 31, 2015." *Id.* at ¶ 83.

20. Neshaminy Inn, the Complaints assert, "regularly rented or otherwise provided rooms and services at the Neshaminy Inn to traffickers engaged in commercial sex acts with [G.D. and N.Z.]" *Id.* at ¶ 66.

21. The Complaints allege that Neshaminy Inn "ha[s] been on notice of repeated incidences of criminal activity, including sex trafficking . . . but failed to take the necessary steps to prevent sex trafficking." *Id.* at ¶ 84.

22. The Complaints allege that Neshaminy Inn owed a duty to G.D. and N.Z. "to exercise reasonable care to protect against criminal conduct" on it premises. *Id.* at ¶ 104.

23. "Despite actual knowledge, constructive knowledge and general awareness of the signs of human trafficking," the Complaints allege, Neshaminy Inn "failed to report to authorities, intervene, disrupt or otherwise stop the human sex trafficking of [G.D. and N.Z.]," which allegedly caused G.D. and N.Z. "to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life, and loss of life's pleasures both in the past and in the future." *Id.* at ¶¶ 107, 110.

24. The Complaints further allege that Neshaminy Inn "acted outrageously and in reckless disregard for the health and welfare of [G.D. and N.Z.] warranting the imposition of punitive damages." *Id.* at ¶ 113.

25. Based on the allegations above and others in the Complaints, G.D. and N.Z. assert four claims against Neshaminy Inn: (1) "Civil Liability Under The Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3051"; (2) "Negligence"; (3) "Negligent Infliction Of Emotional Distress"; and (4) "Negligent Hiring, Training, And/Or Supervision."

26. None of these four claims seeks damages that are covered by the Nautilus Policies.

27. Count II of the Complaints, setting forth the Human Trafficking Law claim, alleges that Neshaminy Inn "knew that they were renting rooms to the individual sex trafficking [G.D. and N.Z.], which resulted in [them] being sex trafficked and sexually exploited." *Id.* at ¶ 124.

28. The Complaints also allege in Count II that Neshaminy Inn "caused [G.D. and N.Z.] to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future." *Id.* at ¶ 126.

29. The Complaints further allege in Count II that Neshaminy Inn "failed to report, intervene, disrupt or otherwise stop sex trafficking" on its premises, and "acted outrageously and in

reckless disregard for the health and welfare of [G.D. and N.Z.] warranting an imposition of punitive damages." *Id.* at ¶¶ 127-28.

30. Each successive Count in the Complaints against Neshaminy Inn incorporates by reference the factual-background and Human-Trafficking-Law allegations summarized above, as though set forth in each successive Count. *Id.* at ¶¶ 152; 177; 190.

31. In Count VI, incorporating all prior allegations and setting forth a Negligence claim, G.D. and N.Z. allege that Neshaminy Inn breached various common-law duties to "provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons" on its premises; to "take precautions against reasonably anticipated criminal conduct by third parties and to operate the Neshaminy Inn in a manner that did not endanger children or other persons, including [G.D. and N.Z.]"; and to "take reasonable steps to protect foreseeable victims of the dangers created by their acts and omissions, including the danger of human trafficking and sexual exploitation" on its premises. *Id.* at ¶¶ 153; 155.

32. Neshaminy Inn breached those duties, the Complaints assert in Count VI, because Neshaminy Inn "knew, or should have known, that persons lawfully on the premises of the Neshaminy Inn, such as [G.D. and N.Z.], could be victimized by, or subjected to, criminal activities on the premises that would likely endanger their health, safety, and/or well-being"; and because it "knew, or should have known, that adults working as sex traffickers were causing, by any means, persons, including [G.D. and N.Z.], to be sexually exploited and trafficked at the Neshaminy Inn on a repeated basis." *Id.* at ¶ 156.

33. G.D. and N.Z. "suffer[ed] serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises of the Neshaminy Inn," according to the Complaints in Count VI. *Id.* at ¶ 157.

34. The Complaints also assert in Count VI that Neshaminy Inn "failed or refused to take adequate precautions to protect persons on the premises of the Neshaminy Inn, including [G.D. and N.Z.], from criminal and violent activities of others, despite a reasonable likelihood that person[s] on the premises of the Neshaminy Inn, including [G.D. and N.Z.], would be victimized by, or subjected to, such criminal and/or violent acts, which could cause such persons serious bodily injury." *Id.* at ¶ 158.

35. Count VI, incorporating all prior allegations, describes various alleged failures related to the security and surveillance of, and protection of persons at, the Neshaminy Inn premises, as well as alleged failures related to the hiring, training, and supervision of individuals working at the Neshaminy Inn premises. *Id.* at ¶¶ 158(a)-(x).

36. In Count IX, incorporating all prior allegations and setting forth a Negligent Infliction Of Emotional Distress claim, G.D. and N.Z. allege that, as a result of the acts and/or omissions of Neshaminy Inn described elsewhere in the Complaints, G.D. and N.Z. suffered "fear, depression, humiliation, mental anguish and severe physical and emotional distress, directly and proximately causing harm and damages" to G.D. and N.Z. *Id.* at ¶ 178.

37. Finally, in Count XII, which incorporates all prior allegations and sets forth a Negligent Hiring, Training, And/Or Supervision claim, the Complaints assert negligent failures of Neshaminy Inn, similar to those alleged in Count VI (Negligence), which directly and proximately resulted in G.D. and N.Z. being "sexually assaulted and exploited while on the premises of the Neshaminy Inn, causing severe injuries to [G.D. and N.Z.] including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future." *Id.* at ¶¶ 191-96.

38. For relief, the Complaints seek a judgment against Neshaminy Inn for both compensatory and punitive damages.

### B.     The Nautilus Policies

39. Nautilus issued to Motel Management Services Inc. d/b/a Neshaminy Inn three commercial general liability insurance policies (collectively, the "Nautilus Policies"), effective for the successive periods of September 1, 2014 to September 1, 2015 (No. NN433648); September 1, 2015 to September 1, 2016 (No. NN580317); and September 1, 2016 to September 1, 2017 (No. NN711835).

40. A copy of Policy No. NN433648, numbered NAUTILUS_000001–58, is attached as Exhibit C.

41. A copy of Policy No. NN580317, numbered NAUTILUS_000059–119, is attached as Exhibit D.

42. A copy of Policy No. NN711835, numbered NAUTILUS_000120–176, is attached as Exhibit E.

43. The Nautilus Policies each provide certain coverage, subject to a $1,000,000 each-occurrence limit and a $2,000,000 general-aggregate limit.

44. The Nautilus Policies contain a SCHEDULE OF NAMED INSUREDS endorsement, which makes "Mary Etzrodt Trust" and "NI45 LLC" additional named insureds under the Nautilus Policies.

45. The Nautilus Policies provide certain commercial general liability insurance pursuant to form CG 00 01 12 04, which states in pertinent part the following:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that

10

     the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    \* \* \*

2. Exclusions

 This insurance does not apply to:

 a. Expected Or Intended Injury

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    \* \* \*

 o. Personal And Advertising Injury

  "Bodily injury" arising out of "personal and advertising injury".

    \* \* \*

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

11

   (1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

  b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.  Exclusions

  This insurance does not apply to:

     \* \* \*

  a.  Knowing Violation Of Rights Of Another

   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

     \* \* \*

  d.  Criminal Acts

   "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

     \* \* \*

SECTION V – DEFINITIONS

     \* \* \*

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

     \* \* \*

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

* * *

Ex. C at NAUTILUS_000011–25; Ex. D at NAUTILUS_000069–83; Ex. E at NAUTILUS_000130–144.

46. The Nautilus Policies contain an endorsement, EXCLUSION-ALL ASSAULT OR BATTERY, which states the following:

    A. The following exclusion is added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability, and Coverage C - Medical Payments:

    Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

    1. Actual or alleged assault or battery;

    2. Physical altercation; or

    3. Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

    This exclusion applies regardless of whether such actual or alleged damages are caused by any:

    1. Insured;

    2. "Employee";

    3. Patron; or

    4. Any other person; and

    whether or not such damages occurred at any premises owned or occupied by any insured.

    This exclusion applies to:

    1. All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of

13

    negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

  2. Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

    a. Emotional distress for loss of society, services, consortium or income; or

    b. Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

  3. Any obligation to share damages with or repay someone who must pay damages because of the injury.

B. We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

Ex. C at NAUTILUS_000035; Ex. D at NAUTILUS_000097; Ex. E at NAUTILUS_000156.

## **LEGAL ARGUMENT**

47. As the pleadings are closed and there are no more material factual issues to resolve, Nautilus moves for an entry of judgment on the pleadings because it is entitled to judgment in its favor as a matter of law. *See* F.R.C.P. 12(c).

48. Under the Declaratory Judgments Act, a declaratory judgment may be granted to afford relief from uncertainty and insecurity regarding legal rights, status and other relations. 28 U.S.C. § 2201 *et seq.*; *Homesite Ins. Co. v. Neary*, No. 17-2297, 2017 U.S. Dist. LEXIS 184990 (E.D. Pa. Nov. 8, 2017).

49. An insurer's duty to defend an insured is determined by the insurance policy and its exclusions, attached as Exhibits C, D and E, and the allegations in the underlying complaints, attached as Exhibits A and B. *J.H. France Refractories v. Allstate Ins. Co.*, 626 A.2d 502, 510 (Pa. 1993).

14

50. In particular, an insurer's duty to defend is determined by comparing the operative complaint against the insured to the four corners of the insurance policy in question. It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 329-30, 908 A.2d 888, 896 (2006).

51. Here, the parties do not dispute the content of the operative complaints or of the Nautilus Policies. Those documents are documents in writing that speak for themselves. All that is disputed is whether the claims alleged in the underlying complaints fall within the four corners of the Nautilus Policies. That question is for this Court to decide. *Kvaerner*, 908 A.2d at 897 ("The interpretation of an insurance policy is a question of law … .").

52. Where, as here, the allegations in the complaints do not state a claim potentially covered by the policy, the insurer has no duty to defend. *Kvaerner*, 908 A.2d at 896.

53. And, where there is no duty to defend, there is no duty to indemnify. *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa.Super.1997) (observing that if there is no duty to defend, there can be no duty to indemnify).

54. Nautilus is entitled to a determination that it does not owe the Motel Management Defendants a defense or indemnity under Policy No. NN580317 (effective September 1, 2015 to September 1, 2016) or Policy No. NN711835 (effective September 1, 2016 to September 1, 2017) because the Underlying Actions do not allege that any bodily injuries allegedly sustained by G.D. and/or N.Z. that occurred during the policy period of either policy.[1]

---

[1] The Motel Management Defendants admitted this fact in Neshaminy Inn's answer to Nautilus's original complaint. *See* Neshaminy Inn Answer to Nautilus Complaint (Doc. 13), ¶ 96.

55. The Underlying Actions also do not allege that a "[f]alse arrest, detention or imprisonment" was committed, if even at all, during the policy period of either Policy No. 580317 (September 1, 2015 to September 1, 2016) or Policy No. 711835 (September 1, 2016 to September 1, 2017).[2]

56. Thus, regardless of the other language of the Nautilus Policies, discussed in more detail below, the insurance under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of Policy No. 580317 and Policy No. 711835 does not apply to the damages sought in the Underlying Actions.

57. Nautilus thus does not owe the Motel Management Defendants a duty, under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of either Policy No. 580317 or Policy No. 711835, to defend or indemnify the Motel Management Defendants in connection with the Underlying Actions.

58. Further, regardless of the other language of the Nautilus Policies, the insurance under SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of Policy No. 580317 and Policy No. 711835 also does not apply to the damages sought in the Underlying Actions.

59. Nautilus thus does not owe the Motel Management Defendants a duty, under SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of either Policy No. 580317 or Policy No. 711835, to defend or indemnify the Motel Management Defendants in connection with the Underlying Actions.

---

[2] The Motel Management Defendants also admitted this fact in their answer to Nautilus's original complaint. *See* Neshaminy Inn Answer to Nautilus Complaint (Doc. 13), ¶ 97

16

60. Nautilus also is entitled to a determination that it does not owe the Motel Management Defendants a defense or indemnity under **any** of the Nautilus Policies because the All Assault Or Battery exclusion applies to preclude coverage for the claims described in the Underlying Actions (*i.e.*, that Motel Management Defendants were knowingly involved in human trafficking/the sex trade and that G.D. and N.Z. were the victims of criminal human trafficking and the victims of repeated assaults).

61. The All Assault Or Battery exclusion provides, regardless of culpability or intent of any person, that there is no coverage for "bodily injury" or "personal and advertising injury" arising out of any: (1) actual or alleged assault or battery; (2) physical altercation; or (3) any act or omission in connection with the prevention or suppression of such acts. *See* Ex. C at NAUTILUS_000035; Ex. D at NAUTILUS_000097; and Ex. E at NAUTILUS_000156.

62. The All Assault Or Battery exclusion also applies to any claim arising out of any act or omission in connection with the prevention or suppression of an assault, battery or physical altercation, including failure to provide adequate security, negligent hiring, placement, training, or supervision. *Id.*

63. G.D. and N.Z.'s Complaints allege that they were assaulted. In support of their claims that they were subjected to sexual servitude, G.D. and N.Z. allege that they were sexually exploited, visibly treated in an aggressive manner, and experienced fear and anxiety. *See* Exs. A and B at ¶¶ 77, 78, 124.

64. G.D. and N.Z. also allege that they sustained "physical harm" and emotional distress because of the illegal contact. *Id.* at ¶¶ 157, 195.

65. G.D. and N.Z. even allege that they were each the victim of "violent" crime. *Id.* at ¶ 157.

66. The allegations set out in the four corners of G.D. and N.Z.'s Complaints make clear that both G.D. and N.Z. were the victim of multiple assaults.

67. The All Assault Or Battery exclusion, therefore, precludes all coverage for the Underlying Actions, including any obligation to defend or indemnify the Motel Management Defendants.

68. Nautilus thus does not owe the Motel Management Defendants a duty, under **any** of the Nautilus Policies, to defend or indemnify the Motel Management Defendants in connection with the Underlying Actions.

69. Nautilus is also entitled to a determination that it does not owe the Motel Management Defendants a defense or indemnity under any of the Nautilus Policies because Pennsylvania public policy precludes coverage under these circumstances.

70. The Complaints in the Underlying Actions allege that the conduct of the Motel Management Defendants: (1) caused, contributed to or supported human trafficking and/or made G.D. and N.Z. victims of the sex trade; (2) that the Motel Management Defendants either participated in the human trafficking or knowingly harbored G.D. and N.Z. and financially benefitted from human sex trafficking; (3) that the Motel Management Defendants failed to take any steps to prevent human trafficking and instead "permitted heinous and unspeakable acts to occur"; and (4) that the Motel Management Defendants engaged in criminal activity, violating the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3001 *et seq*.

71. Pursuant to the public policy of the Commonwealth of Pennsylvania, such conduct is reprehensible and is uninsurable as a matter of law. *See Nautilus Insurance Company v. Motel Management Services, Inc. et al.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018) ("Under Pennsylvania law, it

is against public policy to insure against claims for intentional torts or criminal acts" and "financially benefiting from human trafficking is criminalized under the Pennsylvania Human Trafficking Law.")

72. Nautilus therefore is entitled to a declaration that there is no coverage under the Nautilus Policies for the Underlying Actions by virtue of the terms, conditions and exclusions set out in the Nautilus Policies, including the All Assault Or Battery Exclusion, and as a matter of public policy, and that as such Nautilus has no obligation to defend or indemnify the Motel Management Defendants under the Nautilus Policies in connection with the Complaints in the Underlying Actions.

**WHEREFORE**, Nautilus Insurance Company respectfully requests that this Honorable Court grant its motion for judgment on the pleadings and enter the attached order declaring that Nautilus Insurance Company owes no duty to defend or indemnify Motel Management Services, Inc. d/b/a Neshaminy Inn, The Mary Etzrodt Real Estate Trust and NI45, LLC in the underlying civil actions, *G.D. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and *N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642.

**WHITE AND WILLIAMS LLP**

Dated: September 22, 2020   BY:   *Anthony L. Miscioscia*
Anthony L. Miscioscia (PA ID # 69215)
Justin Fortescue (PA ID # 203999)
1650 Market Street, Suite 1800 Philadelphia, PA 19103-7395
(215) 864 6356/6823
*Attorneys for Plaintiff,
Nautilus Insurance Company*

19