## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>       Plaintiff<br><br>  v.<br><br>MOTEL MANAGEMENT SERVICES INC.<br>d/b/a NESHAMINY INN, *et al.*,<br><br>       Defendants | Civil Action No. 2:20-cv-1607-CMR |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF NAUTILUS INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS

### I.   MATTER BEFORE THE COURT

Nautilus Insurance Company's ("Nautilus") Motion for Judgment on the Pleadings seeks a declaratory judgment that Nautilus is not obligated to defend or indemnify Motel Management Services, Inc., d/b/a Neshaminy Inn, The Mary Etzrodt Real Estate Trust and NI45, LLC ("the Motel Management Defendants"), in connection with two virtually identical underlying civil actions, styled *G.D. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and *N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642 (collectively, "Underlying Actions"). The relevant facts – consisting of the two underlying, operative complaints and the Nautilus Policies – are not disputed. All that remains is for this Court to decide, as a matter of law, whether the Underlying Actions state a claim that falls within the coverage of the Nautilus Policies. The Underlying Actions do <u>not</u>.

The Underlying Actions concern claims that in 2015, G.D. (a minor) and N.Z. were victims of human sex trafficking, which took place when they were trafficked and prostituted at the Neshaminy Inn. The Motel Management Defendants – who are alleged to own, operate and/or

manage the Neshaminy Inn – are alleged to have violated the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3001 *et seq*., by renting rooms to the individual sex trafficking G.D. and N.Z., resulting in their sexual servitude and exploitation and causing them both physical and emotional harm.  The Motel Management Defendants are also alleged to have provided inadequate security to protect G.D. and N.Z. from the "criminal and violent acts" to which they were subjected on the Motel Management Defendants' premises.  The Motel Management Defendants are seeking to require Nautilus to provide them with a defense and indemnity for such claims.

Nautilus, however, does not owe the Motel Management Defendants a defense or indemnity for the Underlying Actions because, among other things, the All Assault Or Battery exclusion precludes all coverage for the Underlying Actions, and because applicable public policy precludes coverage for the claims asserted against the Motel Management Defendants.  Coverage is further precluded under certain of the Nautilus Policies to the extent that no bodily injury or personal or advertising injury offense was committed, or alleged to have been committed, during such Policies' policy period.  Because the pleadings in this case contain the underlying complaints and the Nautilus Policies, and as the question of coverage is a question of law for this Court to decide, judgment on the pleadings should be entered now – declaring that Nautilus has no duty to defend or indemnify the Motel Management Defendants.[1]

## II.    STATEMENT OF QUESTIONS PRESENTED

1.      Whether Nautilus is relieved of any duty to defend or indemnify the Motel Management Defendants in the Underlying Actions under Policy No. NN580317 (effective

---

[1]      Nautilus reserves all rights to further deny or limit coverage for any reason available under the Policies or applicable law, including but not limited to the right to deny Coverage A (bodily injury liability) to the extent that the Underlying Actions do not allege bodily injury caused by an "occurrence", or accident as defined in the Nautilus Policies.

September 1, 2015 to September 1, 2016) or Policy No. NN711835 (effective September 1, 2016 to September 1, 2017) because the Underlying Actions do not allege that any bodily injuries allegedly sustained by G.D. and/or N.Z. occurred during the policy period of either policy or that a "[f]alse arrest, detention or imprisonment" was committed, if even at all, during the policy period of either policy.

**Suggested Answer:  Yes**

2. Whether Nautilus is relieved of any duty to defend or indemnify the Motel Management Defendants in Underlying Actions alleging that the plaintiffs were subjected to sexual servitude and sexually exploited because the claims fall within the All Assault Or Battery exclusion in the Nautilus Policies.

**Suggested Answer:  Yes**

3. Whether Nautilus is relieved of any duty to defend or indemnify the Motel Management Defendants because the Underlying Actions allege that the Motel Management Defendants committed criminal violations of the Pennsylvania Human Trafficking Law, and it is against the public policy of Pennsylvania to provide insurance coverage for criminal acts.

**Suggested Answer:  Yes**

III. **FACTS**

A. **The Underlying Actions**

The Complaints in the Underlying Actions allege that G.D. (a minor) and N.Z. are two of "the thousands of victims of human trafficking being victimized in hotels/motels across the United States." Ex. A at ¶¶ 9, 10; Ex. B at ¶ 9.  According to the Complaints, G.D. and N.Z. met an individual, Paul Branham, in "January of 2015" through a mobile dating app, "Plenty of Fish."  Ex. A at ¶ 68; Ex. B

at ¶ 68.  Branham, the Complaints allege, pleaded guilty in "August 2015" to "felony charges relating to the trafficking of [G.D. and N.Z.] at the Neshaminy Inn. . . ." *Id.* at ¶ 49.

The Complaints further allege that, "through the course of their relationship," Branham "proceeded to exploit [G.D. and N.Z.] by using alcohol and drugs to exploit and manipulate them, before he eventually recruited, enticed, solicited, harbored and/or transported [G.D. and N.Z.] to engage in commercial sex acts at the . . . Neshaminy Inn . . . ." *Id.* at ¶ 68.  The Complaints allege that G.D. and N.Z. "engaged in numerous commercial sex act 'dates' per day at the . . . Neshaminy Inn," during which the "trafficker would leave the room but remain on the premises," and after which G.D. and N.Z. would hand over to their trafficker the cash they received for such sex acts.  *Id.* at ¶¶ 74-75; 81-82.  G.D. and N.Z. allege that they were "visibly treated in an aggressive manner by [their] trafficker while [G.D. and N.Z.] [were] trafficked out of the . . . Neshaminy Inn. . . " and that they "exhibited fear, anxiety and displayed signs of impairment while on the premises and in public areas of the . . . Neshaminy Inn . . . ." *Id.* at ¶¶ 77-78.

In addition to being trafficked to engage in commercial sex acts, G.D. and N.Z. allege they were "forced to take crack cocaine between dates and [were] 'shot up' with heroin while at the . . . Neshaminy Inn. . . ." *Id.* at ¶ 78.  G.D. and N.Z. also allege that police "rescued" them from their trafficker on "January 31, 2015." *Id.* at ¶¶ 78 and 83.

G.D. and N.Z allege that the Motel Management Defendants "regularly rented or otherwise provided rooms and services at the Neshaminy Inn to traffickers engaged in commercial sex acts with [G.D. and N.Z.]" and that the Motel Management Defendants were "uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn[,] *Id.* at ¶¶ 51, 66.  Going further, G.D. and N.Z allege that the Motel Management Defendants "have been on notice of repeated incidences of criminal activity, including sex trafficking . . . but failed to

take the necessary steps to prevent sex trafficking." *Id.* at ¶ 84. Indeed, G.D. and N.Z. allege that rather than "take any steps to prevent human sex trafficking at the Neshaminy Inn[,] [the Motel Management Defendants] "instead permitted heinous and unspeakable acts to occur." *Id.* at ¶ 54. The Complaints also allege that Neshaminy Inn owed a duty to G.D. and N.Z. "to exercise reasonable care to protect against criminal conduct" on its premises. *Id.* at ¶ 104.

G.D. and N.Z. further allege that "[d]espite actual knowledge, constructive knowledge and general awareness of the signs of human trafficking," the Motel Management Defendants "failed to report to authorities, intervene, disrupt or otherwise stop the human sex trafficking of [G.D. and N.Z.]," which allegedly caused G.D. and N.Z. "to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life, and loss of life's pleasures both in the past and in the future." *Id.* at ¶¶ 107, 110. Not surprisingly, G.D. and N.Z. further allege that the Motel Management Defendants "acted outrageously and in reckless disregard for the health and welfare of [G.D. and N.Z.] warranting the imposition of punitive damages." *Id.* ¶ 113.

Count II of the Complaints, the first count against the Motel Management Defendants, is based on the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. §3051, which creates civil liability for entities that knowingly market or provide goods and services to sex traffickers. *See id.* at ¶¶ 123-128. In connection with that count, G.D. and N.Z. allege that the Motel Management Defendants "knew that they were renting rooms to the individual sex trafficking [G.D. and N.Z.], which resulted in [them] being sex trafficked and sexually exploited," thereby causing G.D. and N.Z. "to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future." *Id.* at ¶¶ 124-126. The Complaints further allege in Count II that Neshaminy Inn "failed to report, intervene, disrupt or otherwise stop

sex trafficking" on its premises, and "acted outrageously and in reckless disregard for the health and welfare of [G.D. and N.Z.] warranting an imposition of punitive damages." *Id.* at ¶¶ 127-128.

G.D. and N.Z. base Count VI of the Complaints on the Motel Management Defendants' alleged negligent failure to provide sufficient security.[2] *Id.* at ¶¶ 152-162.  In connection with that count G.D. and N.Z. allege that the Motel Management Defendants knew or should have known that persons on the premises of the Neshaminy Inn, including G.D. and N.Z., "would suffer serious bodily harm as a result of being victimized by violent crimes," which necessarily includes human sex trafficking. *Id.* at ¶¶ 155-157.  G.D. and N.Z. also allege that the Motel Management Defendants failed or refused to take adequate precautions to protect persons on the premises of the Neshaminy Inn, including [G.D. and N.Z.], from criminal and violent activities of others, despite a reasonable likelihood that person[s] on the premises of the Neshaminy Inn, including [G.D. and N.Z.], would be victimized by, or subjected to, such criminal and/or violent acts, which could cause such persons serious bodily injury." *Id.* at ¶ 158.  G.D. and N.Z also allege that they "suffer[ed] serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises of the Neshaminy Inn." *Id.* at ¶ 157.

In Count IX, setting forth a Negligent Infliction Of Emotional Distress claim, G.D. and N.Z. allege that, as a result of the acts and/or omissions of Neshaminy Inn described elsewhere in the Complaints, G.D. and N.Z. suffered "fear, depression, humiliation, mental anguish and severe physical and emotional distress, directly and proximately causing harm and damages" to G.D. and N.Z. *Id.* at ¶ 178.

---

[2] Notably, each successive Count in the Complaints incorporates by reference the factual-background and Human-Trafficking-Law allegations summarized above, as though set forth in each successive Count. *Id.* at ¶¶ 152, 177, 190.

Finally, in Count XII, which sets forth a Negligent Hiring, Training, And/Or Supervision claim, the Complaints assert negligent failures of Neshaminy Inn, similar to those alleged in Count VI (Negligence), which directly and proximately resulted in G.D. and N.Z. being "sexually assaulted and exploited while on the premises of the Neshaminy Inn, causing severe injuries to [G.D. and N.Z.] including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future." *Id.* at ¶¶ 191-196. For relief, the Complaints seek a judgment against the Motel Management Defendants for both compensatory and punitive damages.

### B.    The Nautilus Policies

As set forth in Nautilus' Complaint for Declaratory Judgment, Nautilus issued three commercial general liability insurance policies to Motel Management Services Inc. d/b/a Neshaminy Inn (collectively, the "Nautilus Policies") effective for the successive periods of September 1, 2014 to September 1, 2015 (No. NN433648); September 1, 2015 to September 1, 2016 (No. NN580317); and September 1, 2016 to September 1, 2017 (No. NN711835). *See* Exs. C, D and E.

The Nautilus Policies provide certain commercial general liability insurance pursuant to form CG 00 01 12 04, which states in pertinent part the following:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period; and

        (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

     c.     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

*   *   *

2.     Exclusions

This insurance does not apply to:

     a.     Expected Or Intended Injury

     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*   *   *

     o.     Personal And Advertising Injury

     "Bodily injury" arising out of "personal and advertising injury".

*   *   *

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.     Insuring Agreement

     a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

     (1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

     (2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or

settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.     Exclusions

This insurance does not apply to:

\*   \*   \*

a.     Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\*   \*   \*

d.     Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

\*   \*   \*

SECTION V – DEFINITIONS

\*   \*   \*

3.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*   \*   \*

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

10

\* \* \*

Ex. C at NAUTILUS_000011–25; Ex. D at NAUTILUS_000069–83; Ex. E at NAUTILUS_000130–144.

The Nautilus Policies contain an endorsement, EXCLUSION-ALL ASSAULT OR BATTERY, which states the following:

A.   The following exclusion is added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability, and Coverage C - Medical Payments:

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

1.   Actual or alleged assault or battery;

2.   Physical altercation; or

3.   Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

1.   Insured;

2.   "Employee";

3.   Patron; or

4.   Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

1.   All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

11

2.     Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

    a.    Emotional distress for loss of society, services, consortium or income; or

    b.    Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

3.     Any obligation to share damages with or repay someone who must pay damages because of the injury.

B.    We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

Ex. C at NAUTILUS_000035; Ex. D at NAUTILUS_000097; Ex. E at NAUTILUS_000156.

## IV.   LEGAL ARGUMENT

### A.   Standard For Granting Judgment On The Pleadings

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings. F.R.C.P. 12(c). Under Rule 12(c), a motion for judgment on the pleadings should be granted when, "on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008). Here, the parties do not dispute the content of the operative complaints or of the Nautilus Policies. Those documents are documents in writing that speak for themselves. All that is disputed is whether the claims alleged in the underlying complaints fall within the four corners of the Nautilus Policies. That question is for this Court to decide. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 897 (2006) ("The interpretation of an insurance policy is a question of law … .").

There are three arguments that compel judgment in favor of Nautilus.  First, Nautilus is entitled to a determination that it does not owe the Motel Management Defendants a defense or indemnity under Policy No. NN580317 (effective September 1, 2015 to September 1, 2016) or Policy No. NN711835 (effective September 1, 2016 to September 1, 2017) because the Underlying Actions do not allege that any bodily injuries allegedly sustained by G.D. and/or N.Z. occurred during the policy period of either policy or that a "[f]alse arrest, detention or imprisonment" was committed, if even at all, during the policy period of either Policy.

Second, the All Assault Or Battery exclusion of the Nautilus Policies relieves Nautilus of any obligation to defend or indemnify the Motel Management Defendants with respect to the Underlying Actions.  The Complaints in the Underlying Actions clearly allege assaultive behavior - that the Motel Management Defendants were knowingly involved in human trafficking and the sex trade and their conduct caused, contributed to or supported human trafficking, thereby subjecting G.D. and N.Z. to "sexual[] assault[] and exploit[ation]."  Exs. A and B at ¶ 195.  The allegations in the Complaints, as well as the Pennsylvania Human Trafficking Law, both make clear that each and every time G.D. and N.Z had sex with a "John" they were assaulted.

Third, and as has been recognized under nearly identical facts, s*ee Nautilus Insurance Company v. Motel Management Services, Inc. et al.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018), the public policy of the Commonwealth of Pennsylvania bars coverage for the Underlying Claims.  The Pennsylvania legislature, by virtue of its robust amendments to the Pennsylvania Human Trafficking Law, has declared that human sex trafficking and financially benefitting from it are both criminal and against the public policy of Pennsylvania.  G.D. and N.Z.'s Complaints allege that the Motel Management Defendants knowingly harbored G.D. and N.Z. and financially benefited from human sex trafficking, failed to take any steps to prevent human trafficking and instead "permitted heinous

and unspeakable acts to occur," and engaged in activity which the legislature has made criminal, violating the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3001 *et seq.* Pursuant to the public policy of the Commonwealth of Pennsylvania, such conduct is reprehensible and should be uninsurable as a matter of law.

> **B.     Nautilus Owes No Duty to Defend or Indemnify the Motel Management Defendants under Policy No. NN580317 or Policy No. NN711835 Because the Underlying Actions Do Not Allege that Bodily Injury or a False Arrest, Detention or Imprisonment Took Place During Either Policy Period**

"[A]n insurer is not required to defend a claim when it is apparent on the face of the Complaint that none of the injuries fall within the purview of the insurance policy." *State Auto Prop. & Cas. Ins. Co. v. Miller*, No. 12-3629, 2013 U.S. Dist. LEXIS 39645, at *9 (E.D. Pa. Mar. 22, 2013). Nautilus Policy No. NN580317 and Policy No. NN711835, subject to the other terms, conditions and exclusions set out therein, including the All Assault Or Battery exclusion discussed *infra*, provide coverage for "bodily injury" caused by an "occurrence" provided that the "bodily injury" "occurs during the policy period." *See* Ex. D at NAUTILUS_000069 and Ex. E at NAUTILUS_000130. Nautilus Policy No. NN580317 and Policy No. NN711835, again subject to the other terms, conditions and exclusions set out therein, also provide coverage for "personal and advertising injury"[3] caused by an "offense" but only if the offense was committed "during the policy period." *Id.* at NAUTILUS_000073-74; NAUTILUS_000135-136. The policy period for Policy No. NN580317 was September 1, 2015 to September 1, 2016 and the policy period for Policy No. NN711835 was September 1, 2016 to September 1, 2017. *Id.* at NAUTILUS_000060; NAUTILUS_000121. Thus,

---

[3] "Personal and advertising injury," as pertinent here, means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.      False arrest, detention or imprisonment;

*See* Ex. D at NAUTILUS_000082 and Ex. E at NAUTILUS_000143.

in order for "bodily injury" or "personal and advertising injury" to be covered under either policy, the "bodily injury" or "personal and advertising injury" had to have taken place between September 1, 2015 and September 1, 2016 (in the case of Policy No. NN580317) or between September 1, 2016 and September 1, 2017 (in the case of Policy No. NN711835).

Here, G.D. and N.Z.'s Complaints allege that they were "trafficked for commercial sex" in January 2015 and that they were "rescued" by police on January 31, 2015. *See* Exs. A and B at ¶¶ 100, 83. Thus, any alleged "bodily injury" or "personal and advertising injury" would have taken place in January 2015 – outside the "policy period" of both Policy No. NN580317 and Policy No. NN711835. Accordingly, Policy No. NN580317 and Policy No. NN711835 do not provide coverage for the Underlying Actions and this Court should declare that Nautilus has no duty to defend or indemnify the Motel Management Defendants under these policies.

## C. The All Assault Or Battery Exclusion in the Nautilus Policies Precludes Coverage for the Motel Management Defendants

An insurer's duty to defend and indemnify an insured is determined by the terms of the insurance policy and the factual allegations in the underlying complaint. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 329-30, 908 A.2d 888, 896 (2006); Coverage is triggered only when allegations in the underlying complaint actually or potentially fall within the scope of the insurance policy. *J.H. France Refractories v. Allstate Ins. Co.*, 626 A.2d 502, 510 (Pa. 1993). In deciding whether coverage has been triggered, "the particular cause of action that a complainant pleads is not determinative." *Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). Thus, "[t]he analysis is driven not by the causes of action pled, but by the factual allegations set forth in the complaint." *State Farm Fire & Cas. Co. v. A.S.*, Civ. No. 16-35, 2016 U.S. Dist. LEXIS 179061, *10 (W.D. Pa. Dec. 28, 2016) *citing Haver*, 725 A.2d at 745. This is because

allowing the cause of action to control encourages litigants to file "artful pleadings designed to avoid exclusions in liability insurance policies." *Haver*, 725 A.2d at 746.

Further, where as here, an insurer has no duty to defend, that insurer also has no duty to indemnify. *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa.Super.1997) (observing that if there is no duty to defend, there can be no duty to indemnify).

Here, the Nautilus Policies' broad All Assault Or Battery exclusion precludes any duty to defend or indemnity the Underlying Actions.  As quoted above, that exclusion bars coverage ("[r]egardless of culpability or intent of any person,", including the insured) for any "'bodily injury' … [or] 'personal and advertising injury' arising out of any … [a]ctual or alleged assault or battery … including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation."

Pennsylvania courts have construed the phrase "arising out of" broadly, even when used in a policy exclusion.  Under Pennsylvania law, arising out of means causally connected with, not proximately caused by. *McCabe v. Old Republic Insurance Co.*, 425 Pa. 221, 228 A.2d 901 (1967). "'But for' causation, *i.e.*, a cause and result relationship, is enough to satisfy this provision of the policy." *Forum Ins. Co. v. Allied Secur., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989) (quoting *McCabe*).

Here, it is beyond dispute that the claims and damages asserted in the Underlying Actions all occurred but for the alleged sexual assault of G.D. and N.Z.  In complaints that begin with declaring G.D. and N.Z. to each be "one of the thousands of victims of human trafficking being victimized in hotels/motels across the United States," that allege G.D. and N.Z were both "sexually assaulted and exploited" and that allege the Motel Management Defendants "acted outrageously and in reckless disregard for the health and welfare of [G.D. and N.Z.] warranting the imposition of punitive damages," no one can seriously contend that the Complaints allege that G.D. and N.Z. subjected

themselves to voluntary sexual contact.   It is anticipated, however, that the Motel Management

Defendants will argue just that – that G.D. and N.Z.'s Complaints merely allege prostitution and

negligence. This argument, however, should be rejected as "the characterization of the horrific injuries

suffered by the children who are victims of sexual molestation as resulting from negligence 'would

create a legal oxymoron as an extension of tort law.'"   *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348,

356 (Pa. Super. 1996) *quoting Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 102 (1994).

The entirety of G.D.'s and N.Z.'s Complaints are based on claims of human trafficking and

sexual servitude.  But for that human trafficking and sexual servitude, G.D. and N.Z. would have no

claims or damages.   The Pennsylvania Human Trafficking Law – which is what the Motel

Management Defendants are accused of violating by financially benefitting when G.D.'s and N.Z.'s

traffickers purchased rooms at the Neshaminy Inn Motel, thereby facilitating their sexual servitude –

defines "sexual servitude" as "any sex act or performance involving a sex act for which anything of

value is directly or indirectly given, promised to or received by any individual or which is performed

or provided by any individual and is induced or obtain from (1) a  minor  or (2) any other individual

[through threats of harm, abuse or kidnapping]."   18 Pa. C.S.A. § 3001; § 3012(b).   In the

Pennsylvania Human Trafficking statute, the legislature specifically provides that it is not a defense

to such a claim that "the victim of the sex trade consented to engage in sex trade activity."  18 Pa.

C.S.A. § 3051(j)(8).  Thus, the legislature has clearly made a judgment that victims of sex trafficking

cannot "consent" to be trafficked.  Therefore, every single time G.D. and N.Z. had sex with a "John"

at the premises of the Neshaminy Inn "numerous" time per day, *see* Exs. A and B at ¶ 74, it constituted

an assault to which they were legally unable to consent by virtue of the provisions of the Pennsylvania

Human Trafficking Law.  *See* 18 Pa. C.S.A. § 3051(j)(8).  The sexual acts alleged in the Underlying

17

Actions are a touching, and a touching suffered as part of sexual servitude cannot be consensual, making it a battery.

 *Kobrick v. Stevens, et al.*, Civ. No. 3:13-CV-2865, 2017 U.S. Dist. LEXIS 141694 (Sept. 1, 2017) is instructive. In *Kobrick*, the court held that when a teacher has sexual relations with a student, even if the student consented, the conduct is nevertheless a battery because the student's consent is invalid as a matter of law. *Id.* The court's ruling in *Kobrick* was based on the fact that: (1) "the nature of a student-teacher relationship creates an innate power disparity which renders true consent unattainable"; and (2) the legislature "criminalized" sexual relations between students and teachers "notwithstanding [the] consent [of the student]." *Id.* at \*17 (*citing Chancellor v. Pottsgrove School District*, 501, F. Supp. 2d 695 (E.D. Pa. 2007). In *Kobrick*, and as related to the plaintiff's assault and battery claims, the court specifically held:

> We have already concluded that the combination of Kobrick's status as a minor and the naturally coercive student-teacher relationship rendered Kobrick incapable of consent as a matter of law. Consequently, because Kobrick could not truly acquiesce to Stevens' sexual advances, her ostensible consent is no defense to the assault and battery claims. Because the contact was nonconsensual, Kobrick need not prove physical injury or intent to cause same.

*Id.* at \*20-21 (internal citations omitted).

 Here, the conduct described in G.D.'s and N.Z.'s Complaints is "human trafficking." The legislature has outlawed "human trafficking" which includes causing someone to be subject to "sexual servitude." "Sexual servitude" includes a sex act "for which anything of value is directly or indirectly given . . . which is induced or obtained from . . . a minor [or by threat of serious harm, physical restraint, kidnapping or facilitating access to controlled substances.]" *See* 18 Pa. C.S.A. § 3001; § 3012(b). Such conduct is a felony as are sexual relations between a teacher and student. *See Id.*; *see generally Chancellor*, 501 F. Supp. 2d 695 (discussing that the Pennsylvania legislature determined that in certain situations minors lack the capacity to consent to sexual contact). The

legislature outlawed the student-teacher relationship, despite consent, because of the "innate power disparity" between student and teacher. The legislature outlawed human sex trafficking (both with respect to minors and that involve threat of serious harm, physical restraint or kidnapping) for virtually the same reason and has made clear that victims of sex trafficking cannot "consent" to be trafficked. 18 Pa. C.S.A. § 3051(j)(8). Thus, as the plaintiff in *Kobrick* was incapable of consenting as a matter of law, G.D. and N.Z. were also incapable of consenting to the sexual contact they now allege caused both emotional and physical harm. G.D. and N.Z. were therefore assaulted.

The legislature's use of the word servitude itself implies that G.D. and N.Z. were the victims of assault. "Servitude" is defined as "a condition in which one lacks liberty especially to determine one's course of action or way of life." *Servitude Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/servitude (last visited September 21, 2020.) The allegations in G.D.'s and N.Z.'s Complaints and the terms of the Pennsylvania Human Trafficking Law (as well as their meaning) all demonstrate that G.D. and N.Z. are alleging that they lacked the liberty to determine their own course of action or way of life when they were trafficked at the Neshaminy Inn. Each and every time G.D. and N.Z. "engaged in commercial sex acts" with a "John" – numerous time per day – they were being assaulted because they necessarily lacked the ability to consent by operation of law.

The provisions of the Pennsylvania Human Trafficking Law are not the only proof that G.D. and N.Z. suffered numerous assaults. G.D.'s and N.Z.'s Complaints themselves also allege that they were assaulted. In support of their claims that they were subjected to sexual servitude, G.D. and N.Z. allege that they were sexually assaulted and exploited, visibly treated in an aggressive manner, and experienced fear and anxiety. *See* Exs. A and B at ¶¶ 77, 78, 124, 195. G.D. and N.Z. also allege that they sustained "physical harm" and emotional distress because of the illegal contact. *Id.* at ¶ 157,

195.  G.D. and N.Z. even allege that they were each the victim of "violent" crime. *Id.* at ¶ 157.  Simply put, all of G.D. and N.Z.'s claims are based on their sexual servitude and all of the facts contained in the four corners of their Complaints allege assaultive behavior by those who participated in and facilitated their sexual servitude, no matter how construed.

The language of the All Assault Or Battery exclusion in the Nautilus Policies is plain, and it applies even though the Motel Management Defendants were not accused of assault or battery in the Underlying Actions. [4]  The exclusion provides, regardless of culpability or intent of any person, that there is no coverage for "bodily injury" or "personal and advertising  injury" arising out of any: (1) actual or alleged assault or battery; (2) physical altercation; or (3) any act or omission in connection with the prevention or suppression of such acts.  *See* Ex. C at NAUTILUS_000035; Ex. D at NAUTILUS_000097; and Ex. E at NAUTILUS_000156.  It applies regardless of whether such actual or alleged damages are caused by an employee, patron or any other person.  *Id.*  The exclusion applies to all causes of action arising out of any assault, battery, or physical altercation including allegations of any act, error, or omission relating to such an assault, battery or physical altercation. *Id.*  It also applies to any claim arising out of any act or omission in connection with the prevention or suppression of an assault, battery or physical altercation, including failure to provide adequate security, negligent hiring, placement, training, or supervision.  *Id.*  Thus, even if the Complaints in the Underlying Actions were held to allege "negligent" failure to prevent the assaults rather than

---

[4] The All Assault Or Battery exclusion has been applied on numerous occasions by Pennsylvania court and courts in other jurisdiction where the insured is accused not of committing the assault itself but rather is accused of failing to prevent an assault or battery.  *See Motel Management Services*, 320 F. Supp. 636, *Nautilus Ins. Co. v. Shawn Owens Inc.*, 316 F. Supp. 3d 873, 875 (E.D. Pa. 2018); *Nautilus Ins. Co. v. Tenort*, No. 14-cv-2055, 2015 U.S. Dist. LEXIS 178909 (W.D. Tenn. April 20, 2015).

committing the assaults themselves, the exclusion still applies to the failure to prevent an assault or battery. *Id.*

The allegations in the Complaints make clear that both G.D. and N.Z. were the victim of multiple assaults, and that but for those assaults they would have no claims or damages against the Motel Management Defendants. As the All Assault Or Battery exclusion clearly applies to all of the allegations, and applies even though the Motel Management Defendants are not alleged to have committed the assaults themselves, this Court should declare that Nautilus has no duty to defend or indemnify the Motel Management Defendants in the Underlying Actions.

> **D.**     **Public Policy Precludes Coverage Because the Allegations against the Motel Management Defendants Involve Criminal Acts of Human Trafficking and Sexual Servitude**

Under Pennsylvania public policy, an insurer has no duty to defend or indemnify an insured for reprehensible criminal acts. The factual allegations against the Motel Management Defendants in the Underlying Actions are based on alleged heinous criminal acts and violation of the Pennsylvania Human Trafficking Law, which are uninsurable as a matter of law.

It is "against the public policy of this Commonwealth to permit a carrier to offer insurance for damages assessed as a result of evil or illegal conduct." *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 868 (Pa. 2004) *quoting Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 643, 747 (Pa. 1999). Criminal statutes enacted by the legislature offer a clear justification for invalidating an insurance contract based on public policy. *Greenfield*, 855 A.2d at 866 *citing Burnstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002). Indeed, "[o]nly in the clearest cases . . . may a court make an alleged public policy the basis of judicial decision . . . [T]he fact that the legislature has criminalized the conduct that resulted in the damages . . . exemplifies the clearest of cases." *Greenfield*, 855 A.2d at 868 (internal citations omitted). Further, "when a given policy is so obviously

. . . against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it  . . . a court may constitute itself the voice of the community in so declaring" what is not in accord with public policy.  *Teti v. Huron* Ins. Co., 914 F. Supp. 1132, 1141 (E.D. Pa. 1996) *quoting Electric Ins. Co. v. Rubin*, 32 F.3d 814, 816 (3d Cir. 1995).

As it is against the public policy of this Commonwealth to permit insurance coverage for claims arising from evil or illegal conduct, coverage should be precluded in this case.  G.D. and N.Z.'s Complaints allege that they were the victims of the sex trade up until police "rescued" them from their trafficker.   The Pennsylvania legislature has articulated, through robust amendment to the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3001 *et seq.* in 2014, that human sex trafficking is against the public policy of Pennsylvania and has thus criminalized the conduct that resulted in G.D. and N.Z.'s damages.  The section of the statute addressing criminal acts provides:

> (a) Offense defined. — A person commits a felony:
>
> > (1) of the first degree if the person recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to sexual servitude;
> >
> > (2) of the first degree if the person knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1);
> >
> > (3) of the second degree if the person recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to labor servitude; or
> >
> > (4) of the second degree if the person knowingly benefits financially or receives anything of value from an act which facilitates activity under paragraph (3).
>
> (b) Trafficking in minors. — Notwithstanding section 1103 (relating to sentence of imprisonment for felony), a person shall be sentenced to a term of imprisonment fixed by the court at not more than 40 years if:

(1) the person violates subsection (a)(1) or (2); and

(2) the violation:

        (i) results in a minor being subjected to sexual servitude; and

        (ii) is part of a course of conduct subjecting minors to sexual servitude.

18 Pa. C.S.A. § 3011.  "Sexual servitude" is defined by the Act as:

"Any sex act or performance involving a sex act for which anything of value is directly or indirectly given, promised to or received by any individual or which is performed or provided by any individual, and is induced or obtained from:

(1) A minor.

(2) Any other individual by any of the means set forth in section 3012(b) (relating to involuntary servitude).

18 Pa. C.S.A. § 3001.  The provisions of the act relating to involuntary servitude provide:

 (a) Offense defined. — A person commits a felony of the first degree if the person knowingly, through any of the means described in subsection (b), subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.

(b) Means of subjecting an individual to involuntary servitude. — A person may subject an individual to involuntary servitude through any of the following means:

(1) Causing or threatening to cause serious harm to any individual.

(2) Physically restraining or threatening to physically restrain another individual.

(3) Kidnapping or attempting to kidnap any individual.

(4) Abusing or threatening to abuse the legal process.

(5) Taking or retaining the individual's personal property or real property as a means of coercion.

(6) Engaging in unlawful conduct with respect to documents, as defined in section 3014 (relating to unlawful conduct regarding documents).

(7) Extortion.

(8) Fraud.

(9) Criminal coercion, as defined in section 2906 (relating to criminal coercion).

(10) Duress, through the use of or threat to use unlawful force against the person or another.

(11) Debt coercion.

(12) Facilitating or controlling the individual's access to a controlled substance.

(13) Using any scheme, plan or pattern intended to cause the individual to believe that, if the individual does not perform the labor, services, acts or performances, that individual or another individual will suffer serious harm or physical restraint.

18 Pa. C.S.A. § 3012(b)

G.D.'s and N.Z's Complaints in the Underlying Actions clearly plead that they were the victims of "sexual servitude."  G.D. was a minor when she was the victim of human sex trafficking. Ex. A at ¶ 9.  G.D. and N.Z. both allege that they were "sex trafficked, sexually exploited and victimized repeatedly at the Neshaminy Inn Motel" and that the Motel Management Defendants "financially benefitted" from these activities. Exs. A and B at ¶¶ 36, 124.  G.D. and N.Z. both allege that they were "forced to take crack cocaine between [sex] dates," that they were "shot up with heroin", that they "suffer[ed] serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises of the Neshaminy Inn" and that they were "rescued" by police.  *Id.* at ¶¶ 78, 83 124, 157.  The Complaints also allege that the Motel Management Defendants were "uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn[,] that the Motel Management Defendants "have been on notice

of repeated incidences of criminal activity, including sex trafficking . . . but failed to take the necessary steps to prevent sex trafficking." *Id.* at ¶¶ 54, 66.   Clearly, the Motel Management Defendants financially benefited from the alleged activity which directly facilitated G.D. and N.Z.'s sexual servitude.

These accusations constitute crimes under the above statute.   The average person purchasing insurance would cringe at the suggestion that he was paying for coverage for liability arising out of the sexual servitude of a human being.   There are also other allegations in the Complaints that are reprehensible.   The Motel Management Defendants allegedly "failed to prevent human sex trafficking at the Neshaminy Inn Motel . . . and instead permitted heinous and unspeakable acts to occur." *Id.* at ¶ 54.   Adding insult to injury, they also allegedly "failed to report to authorities, intervene, disrupt or otherwise stop the human sex trafficking" of G.D. and N.Z.   *Id.* at ¶ 107.   Instead, the Motel Management Defendants allegedly knowingly rented rooms to G.D. and N.Z.'s sex trafficker even though they knew G.D. and N.Z. were being sexually exploited.

Count II of the Complaints allege that the Motel Management Defendants violated 18 Pa. C.S.A. § 3051.   *Id.* at ¶¶ 122-128.   The remaining counts against the Motel Management Defendants incorporate all of the preceding averments by reference and arise out of the same alleged facts, actions, or inactions of the Motel Management Defendants which were described above.   Therefore, all the counts against the Motel Management Defendants in the Underlying Actions are based on allegations which constitute criminal violations of the Pennsylvania Human Trafficking Law.

## V.   **CONCLUSION**

For all the reasons stated above, the motion of plaintiff, Nautilus Insurance Company, for judgment on the pleadings seeking a declaration that it does not owe any duty to defend or indemnify the Motel Management Defendants in the underling actions of   *G.D. v. Knights Inn of Trevose, et al.*,

Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and *N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642 should be granted.

**WHITE AND WILLIAMS LLP**

Dated: <u>September 22, 2020</u>       BY:    <u>*Anthony L. Miscioscia*</u>
                                           Anthony L. Miscioscia (PA ID # 69215)
                                           Justin Fortescue (PA ID # 203999)
                                           1650 Market Street, Suite 1800 Philadelphia, PA 19103-7395
                                           (215) 864 6356/6823
                                           *Attorneys for Plaintiff,*
                                           *Nautilus Insurance Company*