IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MOTEL MANAGEMENT SERVICES, INC., | : | CIVIL ACTION |
| d/b/a NESHAMINY INN | : | |
| and | : | |
| MARY ETZRODT TRUST | : | NO. 20-CV-01607 |
| and | : | |
| NI45, LLC | : | |
| and | : | |
| G.D. | : | |
| and | : | |
| N.Z. | : | |
| | : | |
| Defendants. | : | |

BRIEF IN SUPPORT OF MOTION FOR JUDGMENT
ON THE PLEADINGS OF DEFENDANTS
MOTEL MANAGEMENT SERVICES, INC.,
D/B/A NESHAMINY INN, THE MARY ETZRODT TRUST
AND NI45, LLC (THE "DEFENDANT INSUREDS")

I.   **INTRODUCTION**

Motel Management Services, Inc., d/b/a Neshaminy Inn ("MMS"), The Mary Etzrodt Trust and NI45, LLC (collectively "defendant insureds") seek judgment on the pleadings, pursuant to Fed. R.C.P. 12(c), as to the plaintiff insurer's duty to defend.

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." A motion for judgment on the pleadings will be granted, if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. The court will accept the well-pleaded allegations as true, and construe the pleadings in the light most favorable to the nonmoving party, but will not

5288070v2

accept unsupported conclusory statements.  DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262-263 (3d Cir. 2008).

This declaratory judgment action involves issues of insurance coverage with broad public interest implications for both victims of sexual trafficking and for this Commonwealth's hospitality industry, whose hotel and motel operators have purchased liability insurance coverage which they have every reasonable expectation would apply to claims, as here, of alleged negligence in failing to have appropriate policies and procedures in place to detect sex trafficking

As underlying plaintiff and co-defendants' complaints correctly allege, sexual trafficking is a widespread, nationwide problem.  (First Amended Complaint of plaintiff insurer at paragraph 4 and Exhibits A and B thereto at paragraph 9.)  The role of hotel and motels has been explained as largely one of lack of awareness as follows:

> The biggest problem is lack of awareness – hotel staff and guests don't realize that trafficking is happening, or how to recognize the signs.  Even if they recognize a situation as suspicious, they may not know how to report it or whether or not it's worth reporting at all.  "Human Trafficking in the Hotel Industry," https://www.purchased.org/human-trafficking-in-the-hotel-industry, February 10, 2016.

The magnitude of the issue of sexual trafficking at hotels and motels is staggering.  It was recently represented to a court that there were then 21 such sexual trafficking cases in federal court, and that there were "approximately 1,500 sex trafficking victims who have retained lawyers to investigate and evaluate their claims against the hotel industry."  Memorandum of Law in Support of Plaintiffs' Motion for Transfer at 1, n.1, In re: Hotel Industry Sex Trafficking Litigation, MDL No. 2928 (December 9, 2019).

As explained in defendant insureds' motion, this is one of two insurance coverage declaratory judgment actions now pending between plaintiff insurer Nautilus and the defendant insureds arising from the claims of three underlying plaintiffs that they engaged in commercial

sex, as a result of being sexually trafficked by third parties, at rooms rented at several motels, including the Neshaminy Inn, operated by defendant insureds.

The two underlying plaintiffs in this case, G.D. and N.Z., have filed virtually identical underlying complaints against the defendant insureds, which, as explained below, differ to some extent from the now pending amended complaint by underlying plaintiff E.B. against the defendant insureds, which is the subject of the above-referenced other coverage action between plaintiff Nautilus and its insureds pending before Judge Tucker.

In both of the two pending declaratory judgment actions, defendant insureds rely on, among other things, well settled principles as to how to determine an insurer's duty to defend where there is an allegedly applicable exclusion, here Nautilus' "All Assault And Battery" exclusion, including principles reiterated very recently by this Commonwealth's Supreme Court in Erie Ins. Exchange v. Moore, 228 A.3d 258 (Pa. 2020).

As explained below, neither G.D. nor N.Z.'s operative amended complaints, as Moore explicitly requires, are free from "doubt or ambiguity" as to whether their alleged sexual trafficking acts of illegal commercial sex were the result of coercion of force, or threat of force, within the "plain and ordinary" meaning of the term "assault and battery" used in the relied upon Nautilus exclusion.

## II. THE "ALL ASSAULT AND BATTERY" EXCLUSION IS INAPPLICABLE AT THIS JUNCTURE

Under Pennsylvania law an insurer, as here, seeking to avoid the duty to defend based on a policy's exclusion has a heavy burden to demonstrate the exclusion's applicability. To meet that burden, it must show that the only reasonable interpretation of the language of the exclusion, consistent with the "plain and ordinary" meaning of the policy's terms, is preclusive of coverage. Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 163-164 (3d Cir. 2011), citing Madison Const.

Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999).  See also General Refractories Co. v. First State Ins. Co., 94 F.Supp.3d 649, 657 (E.D. Pa. 2015) (insurer bears burden of proving applicability of exclusion, which must be strictly and narrowly interpreted).

The term "assault" is not defined in the Nautilus policy.  (See "all assault and battery" exclusion and Section V – Definitions of the Nautilus Policy attached to plaintiff insurer's First Amended Complaint in Exhibits C, D and E as NAUTILUS 000022 et seq., 000035, 000080 et seq., 000097, 000141 et seq., 000156.)

This Court and the Third Circuit have explained the meaning of the term "assault," as used in policy exclusions, as follows:

> "in Pennsylvania, an individual is guilty of an assault 'if he/she 'attempts to cause or intentionally or recklessly causes bodily injury to another' or 'attempts by physical menace to put another in fear of imminent serious bodily injury.'"  Liberty Surplus Ins. Corp. v. McFaddens at Ballpark LLC, 116 F.Supp.3d 447, 458 (E.D. Pa. 2015), quoting Essex Ins. Co. v. Starlight Mgmt. Co., 198 Fed. Appx. 179, 183 (3d Cir. 2006) (quoting 18 Pa. C.S. §2701).

In the very recent Moore decision, the Pennsylvania Supreme Court explained that coverage must be determined by comparing the language of an exclusion with the factual averments set forth in the underlying complaint, with those factual averments "liberally construed in favor of the insured," with "doubt or ambiguity" "resolved in favor of coverage", and the duty to defend continuing to the extent that there are "undetermined facts that might impact on coverage" and "until the claim is narrowed to one patently outside the policy coverage."  Moore, supra, at 265.

The specific averments set forth in the underlying operative amended complaints of G.D. and N.Z., which plaintiff insurer contends constitute "assault" or "battery," are set forth in, e.g., paragraphs 121 and 122 of plaintiff insurer's First Amended Complaint.  They are described

therein as G.D. and N.Z. being "treated in an aggressive manner," which allegedly caused G.D. and N.Z. to be in "fear" and experience "anxiety," and being exploited through alcohol and drug use.

Neither the quoted averments from the underlying complaints, nor other averments of G.D. and/or N.Z., are free from "doubt or ambiguity," as Moore explicitly requires, as to whether any of underlying plaintiffs' claims arise from being coerced to engage in prostitution or to take drugs against their will, through actual or threatened violence within the "plain and ordinary meaning" of the language of the relied upon exclusion. To the contrary, at this juncture, as explained below, there are "undetermined facts," which preclude foreclosing the "possibility" of liability of the defendant insureds, arising not from assaultive coercion by underlying plaintiffs' trafficker, but by verbal or psychological manipulation, such as professions of love and affection, or by provision of drugs used recreationally by underlying plaintiffs.

Under Pennsylvania law, "[i]n determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." Nationwide Mut. Ins. Co. v. CPB Int'l, Inc. 562 F.3d 591, 595-96 (3d Cir. 2009) (citation omitted).

Also under Pennsylvania law, "an insurer has a duty to defend if there is any possibility that its coverage has been triggered by allegations in the underlying complaint." See Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 674 (3d Cir. 2016) (citing Am. & Foreign Ins. Co., v. Jerry's Sports Ctr., Inc., 2 A.3d 526, 541 (Pa 2010)).

As the Pennsylvania Supreme Court has explained, it is "the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend,"

and an insurer is "obliged" to defend "as long as the complaint might or might not fall within the policy's coverage." Am. & Foreign Ins. Co., 2 A.3d at 541.

As that Court has also explained, in Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999), the question of whether policy language "is reasonably susceptible of different constructions and capable of being understood in more than one sense," "when applied to a particular set of facts," "is not a question to be resolved in a vacuum."

For example, in construing an underlying complaint, involving a shooting during a fight, the Pennsylvania Supreme Court found coverage based on ambiguity as to whether the factual averments, pled by the underlying plaintiff, foreclosed any possibility of liability based on unintentional damages, by looking to other shootings and agreeing with the Superior Court that "gunshot wounds commonly are inflicted deliberately," but "not all injuries from gun violence are intentional." Erie Ins. Exchange v. Moore, 228 A.3d 258, 262 (Pa. 2020).

Similarly, "not all" sexual trafficking victimization is based on violence or threats of violence within the "plain and ordinary" meaning of the term "assault," used in the relied upon exclusion.

More specifically, in reality, sexual trafficking victimization can, and frequently does, occur based not on violence or threats of violence, but predominantly, or even exclusively, on such purely psychological manipulation as "promises of romantic love, a sense of family or access to a better life."  "Human Trafficking 101," part 5 ("How does human trafficking happen in the U.S.?"), https://www.unitas.ngo/human-trafficking-101.

The primary and/or exclusive role of such psychological manipulation in the underlying trafficking is entirely possible on G.D. and N.Z.'s averments, and constitute just such

-6-

"undetermined facts that might impact on coverage," referenced by the Pennsylvania Supreme Court in Moore, supra, at 265, that require an insurer to continue to defend its insureds.

Moreover, under Pennsylvania law, an insurance policy must always be interpreted in light of the nature of the policyholder's business and the insurance purchased to protect that business. For example, as the Pennsylvania Superior Court explained in considering liability insurance issued to a manufacturer,

> "We believe that any manufacturer who is operating with liability coverage has a reasonable expectation that any liability, reasonably encompassed within the policy, which is tied to that manufacturing and distributing process will be covered. After all, that is the primary reason the policy was purchased in the first place." J.H. France Refractories Co. v. Allstate Ins. Co., 578 A.2d 468, 476 (Pa. Super. 1990), aff'd in part, rev'd in part, 626 A.2d 502 (Pa. 1993).

Further, under Pennsylvania law, consideration must be given to whether the language of a relied upon exclusion could have more clearly and specifically addressed the risks, as here, that the insurer contends are excluded from coverage.

For motel and hotel insureds, such as defendants, the illegal sexual activity of third parties, such as the use of rooms for prostitution, is an ever-present risk of the operations being insured, well known to both insureds and insurers.

As set forth below, plaintiff insurer could easily have, but did not, draft an applicable exclusion which excluded, by specific and unambiguous language, such on premises illegal commercial sexual activity:

> "This insurance does not apply to claims, including claims for negligence, arising from actual or alleged illegal commercial sexual activity, including, but not limited to, prostitution and/or sex trafficking, occurring on the Insured's hotel or motel premises."

But, of course, if Nautilus' policy had excluded from the coverage of its motel and hotel insureds the known risk of claims of on premises, illegal sexual activity, by plain and ordinary

language, it would have risked losing the business of many of such customers to its insurer competitors.

Under Pennsylvania law, as the drafter of an insurance policy, it is incumbent upon the insurance company to "delineate as precisely as possible the full extent of coverage." Weisman v. Green Tree Ins. Co., 670 A.2d 160, 162 (Pa. Super. 1996); Carpenter v. Federal Ins. Co., 637 A.2d 1008, 1011 (Pa. Super. 1994).

As the Third Circuit Court of Appeals explained, in determining whether an alternative interpretation of an insured is reasonable and, as here, creates ambiguity, the court may consider "whether alternative or more precise language, if used, would have put the matter beyond reasonable question." Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 165 (3d Cir. 2011), quoting Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe) Ltd., 707 F.2d 775, 778 (3d Cir. 1983).

Moreover, as the Third Circuit Court of Appeals has also explained, under Pennsylvania law "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997).

Operators of hotels and motels could not reasonably be expected to anticipate that the Nautilus exclusion for "assault and battery" would be expanded beyond claims arising from such things as fights and shootings, which would be within the "plain and ordinary" meaning of its terms, to alleged negligence in connection with illegal commercial sex, as here, not unambiguously alleged to be accompanied by use of force to cause bodily injury or threat of force to cause imminent and serious bodily injury.

As policy terms must be construed in the "plain and ordinary" meaning of the language used, on the averments of G.D. and N.Z.'s operative complaints, lacking allegations which are free from "doubt or ambiguity," of being coerced by force causing "bodily injury," or by menace

of force "to put another in fear of imminent serious bodily injury," it is respectfully submitted that, at this juncture, the assault and battery exclusion could only reasonably be construed as inapplicable.

But, even if the contrary interpretation were also reasonable, under Pennsylvania law, recently reiterated by the Supreme Court in Moore, the exclusion would be "ambiguous" and "must be construed in favor of coverage."  Moore, supra, at 267.

**III.    THE CONTINUED FURNISHING OF A DEFENSE BY NAUTILUS TO DEFENDANT INSUREDS ON THE CLAIMS OF G.D. AND N.Z. IS NOT CONTRARY TO PUBLIC POLICY.  TO THE CONTRARY, THE DENIAL AND WITHDRAWAL OF THAT DEFENSE WOULD BE CONTRARY TO PUBLIC POLICY**

In its First Amended Complaint's public policy argument, plaintiff insurer contends that its defendant insureds can only be liable to the underlying plaintiffs if found to have violated the Human Trafficking Statute based on allegedly renting rooms to an individual they knew to be engaged in sex trafficking (see paragraphs 61 and 64).  Plaintiff insurer is undeniably incorrect.

To the contrary, plaintiff insurer seeks to have this court disregard the more limited legal elements of the counts of the underlying complaints not predicated on statutory liability.  It does so on the basis that G.D. and N.Z, incorporated, in standard format, all prior paragraphs in her successive counts.  (See First Amended Complaint at, e.g., paragraph 64.)  Plaintiff insurer contends that, by that standard incorporation, the underlying plaintiffs make all of their counts dependent on the requirements of the claim for statutory liability, sought in only one of the counts against defendants.  See, e.g., id.

But that incorporation plainly does not change that Counts VI, IX and XII of the underlying operative amended complaints of G.D. and N.Z are common law negligence claims, whose elements are separate from and, in no sense dependent upon, liability under the statute, or satisfying the elements of civil liability under the statute.

-9-

5288070v2

Moreover, even were plaintiff insurer's "incorporation" position arguably reasonable (and it is <u>not</u>), it would still have to be rejected at this juncture. This is so because under controlling Pennsylvania law, the determination of an insurer's duty to defend must be made based upon the averments against an insured construed <u>liberally</u>, and because that duty continues "until the claim is narrowed to one patently outside the policy coverage." <u>Moore</u>, <u>supra</u>, at 265.

At this juncture, the averments of the underlying complaints have <u>not</u> been so "narrowed." The "possibility" of liability of defendant insureds, at this juncture, cannot be foreclosed on conduct that is in no sense reprehensible, consisting solely of "constructive knowledge" of their motel staff, <u>without</u> any evidence of actual knowledge that either G.D. or N.Z. was engaging in prostitution, or being sexually trafficked, in connection with the rental of rooms at the Neshaminy Inn.

As underlying plaintiffs and co-defendants themselves correctly explained in their Answer in this action, their underlying complaints, against defendants includes "claims under Pennsylvania common law for negligence, negligent infliction of emotional distress and negligent hiring, training and/or supervision" based on merely alleged "constructive" knowledge. (Answer and Affirmative Defenses of Defendants G.D. and N.Z. to Plaintiff's First Amended Complaint for Declaratory Judgment at second affirmative defense. <u>See</u> also paragraphs 3, 110, 120-125 of said Answer.)

Those "lack of awareness" claims in this matter include allegedly "failing to detect and respond to commercial sex activity and human sex trafficking at the Neshaminy Inn," failing to "adequately control access" to the premises; failure to provide "protocols," "policies and guidelines" and failing to "utilize" and "maintain" "surveillance equipment" (paragraph 158 of the underlying amended complaints).

As underlying plaintiffs further correctly explain, those claims are entirely "separate and distinct" from any claim under the Pennsylvania Human Trafficking Statute. Answer and Affirmative Defenses of G.D. and N.Z. to Plaintiff's First Amended Complaint for Declaratory Judgment at paragraphs 64, 65, 69-71.

That underlying claims include as a potential basis of liability such purely negligent, non-reprehensible conduct is in no sense surprising. To the contrary, that is consistent with the similar sexual trafficking cases exploding nationwide against motels and hotels operations, based on the "lack of awareness" and "hotel staff and guests" not realizing "that trafficking is happening, or how to recognize the signs," as noted above.

Pennsylvania undeniably has no public policy against the continued furnishing by Nautilus of a defense where, as here, the potential liability of its insureds cannot be foreclosed, based on such negligence and lack of awareness of third party criminality. See Board of Public Education of School District of Pittsburgh v. National Union Fire Ins. Co. of Pittsburgh, PA, 709 A.2d 910 (Pa. Super. 1998).

In that Board of Public Education decision, the Superior Court found coverage for a school district's alleged negligence in connection with the criminal sexual molestation of a student. Id. at, e.g., 917. While the exclusion in that case differs from here, the issue of public policy is directly implicated as the appellate court in that case stated forcefully that

> "[t]o deny the School District a defense against claims [arising from a minor student's sexual abuse] that do not allege excluded conduct by the [insured] would be intolerable." (emphasis added). Id. at 917.

Further, the one point on which defendant insureds agree with plaintiff insurer is the heinous nature of the conduct of sexual traffickers exploiting victims. Yet plaintiff insurer's position as to no coverage in connection with any sexual trafficking under any circumstances

-11-

would have far reaching adverse consequences not only to the Commonwealth's hospitality industry insureds, but to the victims of sexual trafficking. This would, in fact, be <u>contrary</u> to public policy for two reasons.

First, Pennsylvania has a strong public interest in favor of providing insurance coverage within the reasonable expectation of its insureds to further the "contract's prime purpose of indemnification," explained by its Supreme Court as follows:

> "when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." <u>Donegal Mut. Ins. Co. v. Bauhammers</u>, 938 A.2d 286, 290 (Pa. 2007), <u>quoting</u> <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006).

Second, as significantly on the particular facts of this case, Pennsylvania also has an "important" public interest, recently reiterated by its Supreme Court, against depriving insureds of reasonably expected coverage that would

> "unnecessarily withhold compensation to tort victims." (<u>Moore</u>, <u>supra</u>, at 267.)

Under Pennsylvania law, coverage can be denied as contrary to public policy "[o]nly in the clearest cases." See <u>Hall v. Amica Mut. Ins. Co.</u>, 648 A.2d 755, 760, 761 (Pa. 1994), <u>quoting</u> <u>Mamlin v. Genoe</u>, 17 A.2d 407, 409 (Pa. 1941).

### IV.     <u>CONCLUSION</u>

As explained above, it is respectfully submitted:

(i)     that the relied upon "assault and battery" exclusion must be construed at this juncture in favor of defense coverage on the underlying operative amended complaints of G.D. and N.Z. that do not include allegations of force of bodily injury, or threat of force, to inflict serious imminent bodily injury, which are free from "doubt or ambiguity" or

-12-

"undetermined facts" as to whether either underlying plaintiff was so coerced by conduct within the plain and ordinary meaning of the relied upon exclusion, and

    (ii) that it is not the continued furnishing of a defense, but the denial and withdrawal of the defense of defendant insureds on the underlying claims, that would be contrary to Pennsylvania public policy.

                  Respectfully submitted,

Date:  September 22, 2020       /s/ Jeffrey R. Lerman
                  Jeffrey R. Lerman, Esquire
                  Glenn F. Rosenblum, Esquire
                  Montgomery, McCracken, Walker & Rhoads, LLP
                  1735 Market Street, 19th Floor
                  Philadelphia, PA  19103
                  (215) 772-1500 (telephone)
                  (215) 772-7620 (facsimile)

                  *Attorneys for Defendants*
                  *Motel Management Services, Inc. d/b/a Neshaminy Inn,*
                  *The Mary Etzrodt Trust and NI45, LLC*