UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>          Plaintiff<br><br>     v.<br><br>MOTEL MANAGEMENT SERVICES INC.<br>d/b/a NESHAMINY INN, *et al.*,<br><br>          Defendants | Civil Action No. 2:20-cv-1607-CMR |

**NAUTILUS INSURANCE COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.      SUMMARY**

As set out at length in Nautilus Insurance Company's ("Nautilus") Motion for Judgment on the Pleadings and Memorandum of Law in Support, and in Nautilus's response in opposition to Defendants' Motion for Judgment on the Pleadings[1], the Complaints filed by G.D. and N.Z. against defendants Motel Management Services, Inc. d/b/a Neshaminy Inn, The Mary Etzrodt Real Estate Trust, and NI45 (the "Motel Management Defendants") plainly allege that both G.D. and N.Z. were the victims of numerous, daily assaults and batteries as a result of their being subjected to sexual servitude at the hands of their sex trafficker. The Complaints also allege that the Motel Management

---

[1] In the interest of brevity, and to avoid unnecessary repetition, Nautilus refers to and incorporates herein its Motion for Judgment on the Pleadings, its briefing thereof, and its Response in Opposition to Defendants' Motion for Judgment on the Pleadings as if set forth fully herein. For this same reason, Nautilus has not included a counter-statement of facts or standard of review in its memorandum as both were addressed in Nautilus' motion for judgment on the pleadings, its memorandum of law in support thereof and in Nautilus' Response in Opposition to Defendants' Motion for Judgment on the Pleadings.

Defendants were aware of, or at the very least, recklessly turned a blind eye to the human sex trafficking of G.D. and N.Z.

To avoid the reality of the allegations in the Complaints, the Motel Management Defendants attempt to mischaracterize the hotel/motel industry's role in the nationwide sex trafficking problem as "one of lack of awareness." (*See* Motel Management's Memo of Law, Doc. 32-1 at 2.) Unfortunately for the Motel Management Defendants, it is the allegations in the underlying Complaints that determine Nautilus's obligations under the insurance policies at issue; not Motel Management Defendants' characterization of same. The allegations in the underlying Complaints make clear that coverage for the Motel Management Defendants' is precluded by: (1) the All Assault Or Battery exclusion in the Nautilus policies; and (2) Pennsylvania public policy.[2]

## II.     ARGUMENT

### A.     G.D. and N.Z. Both Plainly Allege that They Were the Victims of Numerous Assaults and/or Batteries Under the Common and Ordinary Definition of Both Terms, Whether by Physical or Psychological Force

In an attempt to avoid the application of the All Assault Or Battery exclusion contained in the Nautilus policies at issue, the Motel Management Defendants advance two main arguments. First, they argue that Nautilus has to continue providing a defense because "'not all' sexual trafficking victimization is based on violence or threats of violence within the 'plain and ordinary' meaning of the term 'assault'" and that sexual trafficking victimization "can, and frequently does, occur based on . . . purely psychological manipulation as 'promises of romantic love, a sense of family or access to a better life.'" (Doc. 32-1 at 6.) Second, the Motel Management Defendants argue that because Nautilus could have drafted a more "specific" exclusion, the All Assault Or Battery exclusion should not be a bar to coverage. (Doc. 32-1 at 7-8.) Neither argument has merit.

First and foremost, the Motel Management Defendants' argument that Nautilus has to continue providing a defense because it is "possible" that G.D. and N.Z. were only "psychologically" forced to have sex against their will ignores the facts alleged – namely, that the G.D. and N.Z. suffered a battery each and every time that had sex with a "John." Nautilus's duty to defend, if any, turns on the factual allegations actually contained in the underlying Complaints. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 329-30, 908 A.2d 888, 896 (2006) ("It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured.")

Both of the underlying Complaints allege facts placing the alleged damages squarely and entirely within the All Assault Or Battery exclusion. As set out in detail in Nautilus' motion for judgment on the pleadings, and as is made clear by *Kobrick v. Stevens et al.*, Civ. no. 3:13-CV-2865, 2017 U.S. Dist. LEXIS 141694 (M.D. Pa. Sept. 1, 2017), a touching without consent is a battery, even when the lack of consent arises because the consent given was invalid as a matter of law. While *Kobrick* does not involve insurance coverage, it is directly on point in this case – *Kobrick* held that "Pennsylvania law defines battery as an intentional 'harmful or offensive contact with the person of another'" and that "[t]ouching without consent is always offensive, and, in such circumstances, no intent to harm or actual injury need be established." *Id.* at *20. *See also Conway v. A.I. DuPont Hosp. for Children*, No. 04-4862, 2009 U.S. Dist. LEXIS 896, at *44 n.19 (E.D. Pa. Jan. 6, 2009) ("The focus of an inquiry into the tort of battery is whether an unconsented-to touching occurred.) Here, as G.D. (a minor) and N.Z. allege they were subjected to sexual servitude (including that they were sexually assaulted and exploited, visibly treated in an aggressive manner, experienced fear and anxiety, that they sustained "physical harm" and emotional distress because of the illegal contact and

that they were each the victim of "violent crime")[3] -- "touched" to say the least -- any consent they provided would be invalid as a matter of law.  *See* 18 Pa. C.S.A. §3051(j)(8).  Therefore, the All Assault Or Battery exclusion applies and bars coverage for the underlying actions.

Moreover, under Pennsylvania law, it is no answer to say that G.D. and N.Z. were only "psychologically" forced to have sex against their will.  A person can be guilty of rape, aggravated indecent assault, and indecent assault by the "threat of forcible compulsion that would prevent resistance of a person of reasonable resolution."  *See* 18 Pa. Cons. Stat. § 3121 (rape); 18 Pa. Cons. Stat. § 3126 (indecent assault); 18 Pa. Cons. Stat. § 3125 (aggravated indecent assault).  Pennsylvania courts have interpreted threats of forcible compulsion to include "moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will.  *Com. v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986).  Forcible compulsion is analyzed under a multitude of factors including, "domination or custodial control over the victim, and whether the victim was under duress."  *Id.*  Thus, the fact that it is "possible" that G.D. and N.Z. were only "psychologically" forced to have sex against their will is of no moment with respect to the applicability of the All Assault Or Battery exclusion.  This argument also, as set out above, wholly disregards the fact that G.D. and N.Z. suffered a battery each and every time they had sex with a "John."

The Motel Management Defendants also rely on *Erie Ins. Exchange v. Moore*, 228 A.3d 258 (Pa. 2020) for the argument that there may be "undetermined facts that might impact on coverage."  Defendants' reliance on that case, however, is misplaced.  *Moore* involved a factual scenario which, at least as plead in the operative complaint, was unclear:  whether a gunshot wound was inflicted deliberately or accidentally.  The complaint alleged that the gun was fired "negligently, carelessly and recklessly" during the course of a physical struggle.  *Id.* at 266.  Clearly the factual allegations in that

---

[3] S*ee* Docs. 31-1 and 32-2 at ¶¶ 77, 78, 124, 157, 195.

-5-

case did not foreclose the possibility that the gun was truly fired negligently and the court therefore found a duty to defend on the part of the insurer. *Id.* at 267. Here, the facts as pled by G.D. and N.Z. are unambiguous. Simply put, G.D. (a minor) and N.Z. were trafficked and subjected to sexual servitude and had sex with "Johns" on multiple occasions. As explained above, and in Nautilus' motion for judgment on the pleadings, each of those sex acts constituted a battery because any purported consent G.D. or N.Z. may have provided was invalid as a matter of law, *see* 18. Pa. C.S.A. §3051(j)(8), and the common and ordinary definition of a battery is a touching without consent. *See Kobrick*, 2017 U.S. Dist. LEXIS 141694 at *20 ("Pennsylvania law defines battery as an intentional 'harmful or offensive contact with the person of another.' . . . Touching without consent is always offensive, and, in such circumstances, no intent to harm or actual injury need be established." (internal citations omitted); *Conway,* 2009 U.S. Dist. LEXIS 896 at *44 ("The focus of an inquiry into the tort of battery is whether an unconsented-to touching occurred.)

The Motel Management Defendants' argument that Nautilus could have drafted a more "specific" exclusion fares no better. (Doc. 32-1 at 7-8.) As drafted, the All Assault Or Battery exclusion clearly and unambiguously provides, regardless of culpability or intent of any person, that there is no coverage for "bodily injury" or "personal and advertising injury" arising out of any: (1) actual or alleged assault or battery; (2) physical altercation; or (3) any act or omission in connection with the prevention or suppression of such acts. (*See* Nautilus policies, Doc. 31-3 at NAUTILUS_000035, Doc. 31-4 at NAUTILUS_000097 and Doc. 31-5 at NAUTILUS_000156.) The exclusion applies regardless of whether such actual or alleged damages are caused by an employee, patron or any other person. *Id.* It applies to all causes of action arising out of any assault, battery, or physical altercation including allegations of any act, error, or omission relating to such an assault, battery or physical altercation. *Id.* It also applies to any claim arising out of any act or

omission in connection with the prevention or suppression of an assault, battery or physical altercation, including failure to provide adequate security, negligent hiring, placement, training, or supervision. *Id.*

The fact that the exclusion does not specifically say "assaults and batteries involving prostitution and/or sex trafficking," does not, as Motel Management Defendants argue, make the exclusion ambiguous. Indeed, insurance companies could not possibly write exclusions that describe every possible circumstance that may arise. Under Defendants' argument, the All Assault Or Battery exclusion would likewise not apply to assaults with a firearm since the exclusion does not specifically say "assaults with firearms." Removed from the legal context, a sentence saying "the car is orange" is not ambiguous because the sentence could have said "the car is the color that results from combining the primary colors red and yellow." Though the latter contains more detail, both sentences convey the same meaning. This is precisely why insurers are permitted to draft exclusions based on language that is commonly understood – such as the terms "all," "assault" and "battery" – to exclude a broad subset of circumstances from coverage. And this is precisely why these types of exclusions, including the very one at issue in this case, have been applied on numerous occasions by Pennsylvania courts and courts in other jurisdictions. *See Nautilus Insurance Company v. Motel Management Services, Inc. et al.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018), *Nautilus Ins. Co. v. Shawn Owens Inc.*, 316 F. Supp. 3d 873, 875 (E.D. Pa. 2018); *Nautilus Ins. Co. v. Tenort*, No. 14-cv-2055, 2015 U.S. Dist. LEXIS 178909 (W.D. Tenn. April 20, 2015).

Here, the allegations in the Complaints make clear that both G.D. and N.Z. were the victims of multiple assaults and batteries, and that, but for those assaults and batteries, they would have no claims or damages against the Motel Management Defendants. As the All Assault Or Battery exclusion clearly applies to all of the allegations, and applies even though the Motel Management

Defendants are not alleged to have committed the assaults themselves, this Court should deny the Motel Management Defendants Motion for Judgment on the Pleadings and declare that Nautilus has no duty to defend or indemnify the Motel Management Defendants in the Underlying Actions.

### B. The Continued Furnishing of a Defense to the Motel Management Defendants Is Contrary to Public Policy

In an attempt to escape the fact that it would be against public policy to provide a defense for the Motel Management Defendants in actions alleging they financially benefitted from human sex trafficking, the Motel Management Defendants offer a number of arguments. None can withstand scrutiny.

First, the Motel Management Defendants argue that because the Complaints in the Underlying Actions include "common law negligence claims," there is a "possibility" that Defendants' liability is based solely on "constructive knowledge" or on claims involving a "lack of awareness" and therefore it is not against public policy for Nautilus to continue providing a defense. But while it is true that the Complaints in the Underlying Actions include negligence claims, Pennsylvania law is clear that "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." *Mut. Benefit Ins. Co. v. Haver*, 555 Pa. 534, 538-39, 725 A.2d 743, 745 (1999). Here the very same negligence claims on which the Motel Management Defendants rely incorporate all of the preceding averments by reference. (*See* Doc. 31-1 and 31-2 at ¶¶ 152, 177 and 190.) Thus, the negligence counts incorporate the allegations that the Motel Management Defendants, by and through their employees, were "uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn[,] that the Motel Management Defendants "have been on notice of repeated incidences of criminal activity, including sex trafficking . . . but failed to take the necessary steps to prevent sex trafficking" and that rather than "take any steps to prevent

human sex trafficking at the Neshaminy Inn[,] [the Motel Management Defendants] "instead permitted heinous and unspeakable acts to occur." (*Id.* at ¶¶ 51, 66, 84.)

Accordingly, all the counts against the Motel Management Defendants in the Underlying Actions are based on allegations which constitute criminal violations of the Pennsylvania Human Trafficking Law. The Motel Management Defendants cannot escape the fact that G.D. and N.Z. elected to incorporate all of the preceding averments of reprehensible criminal conduct into the later counts of negligence and negligent infliction of emotion distress. In short, the Motel Management Defendants cannot select the portions of the Complaints which they view as favorable to them and ignore the rest.

The Motel Management Defendants' argument that the negligence claims against them may be based on alleged "constructive knowledge" also misses the mark. (*See* Doc. 32-1 at 10.) Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Gleeson v. State Bd. of Medicine*, 900 A.2d 430 (Pa. Cmwlth. 2005). Here, if reasonable care or diligence on the part of the Motel Management Defendants would have discovered what was occurring on its premises (*i.e.*, human sex trafficking), public policy should not reward the company with insurance for turning a blind eye to such reprehensible actions. This is particularly true here, where G.D. and N.Z. both allege, as part of their negligence counts, that the Motel Management Defendants "acted outrageously and in reckless disregard for the health and welfare of [G.D. and N.Z.] warranting the imposition of punitive damages." (*Id.* at ¶¶ 162; 179; 196.)

Defendants' reliance on *Bd. of Educ. of the Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 709 A.2d 910 (Pa. Super. 1998) is also misplaced. *Bd. of Educ.* had absolutely nothing to do with "public policy;" the words "public policy" do not even appear in the text of the decision. Moreover, no

allegations were made in that case, unlike here, that the Board of Public Education was complicit in the illicit conduct. Here, as outlined in Nautilus' motion for judgment on the pleadings, the Motel Management Defendants are alleged to have engaged in conduct which, if proven, is both criminal and reprehensible.[4] This case – involving private entities which allegedly not only knew or had constructive knowledge of human sex trafficking (including of a minor) but who also failed to do anything about it in order to turn a profit – is a textbook example of why courts are permitted to hold that providing insurance coverage in certain circumstances is violative of public policy.

Defendants' argument that there is an important public interest against depriving the Motel Management Defendants of insurance coverage since it would "unnecessarily withhold compensation" to G.D. and N.Z. should also be rejected. This is hardly an overriding public policy concern as it is an argument that is available in every single case in which public policy concerns are raised and yet, there are instances, such as here, where providing insurance coverage would be against the public policy of Pennsylvania. *See e.g.*, *Minnesota Fire & Cas. v. Greenfield*, 855 A.2d 854, 868 (Pa. 2004); *Nautilus Insurance Company v. Motel Management Services, Inc. et al.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018) ("Under Pennsylvania law, it is against public policy to insure against claims for intentional torts or criminal acts" and "financially benefitting from human sex trafficking is criminalized under the Pennsylvania Human Trafficking Law.") There is ample public evidence that hotels have long known about the issue of human trafficking and the signs thereof, and yet they have done nothing to stop it until victims began filing lawsuits and the hotels were therefore faced with the prospect of settlements that "could run into the billions of dollars." Andrew Welsh-Huggins, Human

---

[4] While the court in *Bd. of Educ.* found insurance coverage for the Board where the claims involved a third party's sexual abuse of a minor, it is notable that the insurance policy in that case did not contain any "express exclusions for negligent supervision, control or hiring . . ." whereas the Nautilus Policies do. *Id.* at 915.

Trafficking Lawsuits Allege Hotels Ignored Problems, ABC News (Dec. 19, 2019), http://abcnews.go.com/Business/wireStory/lawsuits-allege-hotel-chains-human-trafficking-67820401 (last visited October 20, 2020). The hotel and motel industry is now, finally, taking steps to prevent and end human sex trafficking, but much of the incentive for doing so disappears if insurers are called upon to pay for the damage caused.

Lastly, the Motel Management Defendants' argument that they "reasonably expected" insurance coverage for claims involving alleged human sex trafficking is, in and of itself, another reason why public policy forbids coverage in this situation. (*See* Doc. 32-1 at 8.) This is particularly true in this case where the Motel Management Defendants also expressly acknowledge that it was "well known" and an "ever-present risk" that "illegal sexual activity of third parties" would take place in hotel or motel rooms. (*See* Doc 32 at ¶ 27.) Pennsylvania has criminalized human sex trafficking precisely because it is such a scourge on society and letting defendants alleged to have been knowingly involved in such claims to be provided with insurance coverage runs counter to the goal of the statute itself – to end human sex trafficking. Simply put, the fact that the Motel Management Defendants allegedly "reasonably expected" insurance coverage for claims that they had actual or constructive knowledge of human sex trafficking, that they did nothing to prevent said human sex trafficking and that, as a result, individuals on premises (including G.D. and N.Z.) would be subjected to sexual servitude and suffer physical and emotional injury, is precisely the reason public policy precludes coverage.

### III. CONCLUSION

For all the reasons stated above, as well as those in Nautilus' motion for judgment on the pleadings and memorandum of law in support thereof, Nautilus does not owe any duty to defend or indemnify the Motel Management Defendants in the underling actions of *G.D. v. Knights Inn of*

-10-
25386119v.1

*Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202631, and *N.Z. v. v. Knights Inn of Trevose, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, No. 191202642.

**WHITE AND WILLIAMS LLP**

Dated: October 20, 2020    BY:   *Anthony L. Miscioscia*
Anthony L. Miscioscia (PA ID # 69215)
Justin Fortescue (PA ID # 203999)
1650 Market Street, Suite 1800 Philadelphia, PA 19103-7395
(215) 864 6356/6823
*Attorneys for Plaintiff,*
*Nautilus Insurance Company*