IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MOTEL MANAGEMENT SERVICES, INC., | : | CIVIL ACTION |
| d/b/a NESHAMINY INN | : | |
| and | : | |
| MARY ETZRODT TRUST | : | NO. 20-CV-01607 |
| and | : | |
| NI45, LLC | : | |
| and | : | |
| G.D. | : | |
| and | : | |
| N.Z. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS MOTEL MANAGEMENT SERVICES, INC., D/B/A NESHAMINY INN, THE MARY ETZRODT TRUST AND NI45, LLC'S (THE "DEFENDANT INSUREDS") MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF INSURER'S MOTION <u>FOR JUDGMENT ON THE PLEADINGS</u>**

I.  **INTRODUCTION**

In this insurance coverage action, both plaintiff insurer and defendant insureds have filed cross-motions for judgment on the pleadings. In this response to plaintiff insurer's motion, defendant insureds incorporate by reference their motion and brief for judgment on the pleadings in their favor.

To avoid repetitiveness, defendant insureds will discuss only cursorily the facts, law and arguments which they have more fully set forth in their own moving papers for judgment in their favor. As defendant insureds believe that summary discussion of the deficiencies of plaintiff insurer's motion for judgment at the outset promotes understanding, the most glaring deficiencies are set forth immediately below:

5342649v2

1.       Plaintiff insurer distorts the nature of the underlying claims against the defendant insureds.  It does so by the baseless contention that because one (of the four) underlying counts against defendant insureds seeks liability under the Pennsylvania Human Trafficking Statute, and allegedly requires knowing participation in sex trafficking, that makes the three underlying counts based on common law negligence (i) dependent on such actual knowledge that the underlying plaintiffs were being sexually trafficked, and (ii) dependent on proof under those common law negligence claims that defendant insureds are guilty of "criminal conduct" or "criminal violations" uninsurable under Pennsylvania law.  (See plaintiff insurer's brief ("plaintiff's brief") at, e.g., 25.)

This is an egregious distortion of the underlying claims.  As the underlying plaintiffs, as co-defendants in this case, have correctly explained, those three negligence claims against defendant insureds are in no sense dependent upon either such actual knowledge of sexual trafficking[1] or defendant insureds engaging in criminal conduct.

Plaintiff insurer's contrary contention is based on the incorporation in the underlying complaints, in each separate and subsequent count, of the paragraphs of prior counts.  (See First Amended Complaint at, e.g., paragraph 64.)  Experience teaches, however, that this practice is nothing more than standard format pleading used in virtually all multi-count complaints.

Most egregiously, plaintiff insurer cavalierly ignores the contrary and alternative factual averments of the underlying common law negligence claims, such as that defendant insureds' alleged liability is based not on knowing participation in criminal sexual trafficking, but on

---

[1] As, the underlying plaintiffs have explained in this case, their three common law negligence claims are premised on merely "constructive," not actual, knowledge and are "separate and distinct" from their statutory human trafficking claims. (Answer and Affirmative Defenses of G.D. and N.Z. to Plaintiff's First Amended Complaint for Declaratory Judgment at paragraphs 3, 64, 65, 69-71, 110, 120-125 and second affirmative defense.)

defendant insureds failing "to recognize that Plaintiff was being sex trafficked" (underlying amended complaints at paragraph 99) (emphasis added).

It is difficult to see this distortion as to alleged knowing participation in sex trafficking as attributable to a merely erroneous reading of the underlying complaints, given

      (i)      the specificity of the alternative contention that defendant insureds failed "to recognize that Plaintiff was being sex trafficked," and

      (ii)      the many similar cases nationwide that seek to hold motel and hotel operators liable for the sexual trafficking of third parties based on an alleged failure to have appropriate procedures in place to detect such trafficking.  See Memorandum of Law in Support of Plaintiffs' Motion for Transfer at 1, n.1, In re: Hotel Industry Sex Trafficking Litigation, MDL No. 2928 (December 9, 2019).[2]

2.      While plaintiff insurer is correct that determination of the duty to defend requires a comparison of "the operative complaint against the insured to the four corners of the insurance policy in question," (plaintiff insurer's motion at paragraph 50), in the entirety of its moving motion papers, plaintiff insurer omits any meaningful discussion, or disclosure, of the controlling standards as to how that comparison must be made under Pennsylvania law, including:

      (a)      that in determining the existence of a duty to defend, the factual allegations of the complaint are "liberally construed in favor of the insured." Nationwide Mut. Ins. Co. v. CPB Int'l, Inc. 562 F.3d 591, 595-96 (3d Cir. 2009) (citation omitted).

---

[2] Indeed, the role of hotel and motels in sex trafficking has been widely publicized as largely one of just such of lack of awareness where, "hotel staff and guests don't realize that trafficking is happening, or how to recognize the signs."  "Human Trafficking in the Hotel Industry," https://www.purchased.org/human-trafficking-in-the-hotel-industry, February 10, 2016.

    (b) that an insurer is "obliged" to defend its insureds, as long as the complaint "might or might not fall" within the policy's coverage. <u>Am. and Foreign Ins. Co. v. Jerry's Sport Center</u>, 2 A.3d 526, 541 (Pa. 2010).

    (c) that unless the underlying factual averments are free from "doubt or ambiguity" or "undetermined facts that might impact on coverage," a duty to defend exists and continues "until the claim is narrowed to one patently outside the policy coverage," (<u>Erie Ins. Exchange v. Moore</u>, 228 A.3d 258, 265 (Pa. 2020)) and "there is no possibility" that the insurer's coverage has been triggered by allegations in the underlying complaint. <u>Allstate Property and Cas. Ins. Co. v. Winslow</u>, 66 F. Supp. 3d 661, 668, 670 (W.D. Pa. 2014).

    (d) that an insurer seeking to avoid the duty to defend based on a policy's exclusion must show that the <u>only</u> reasonable interpretation of the language of the exclusion, consistent with the "plain and ordinary" meaning of the policy's terms, is preclusive of coverage. <u>Meyer v. CUNA Mut. Ins. Soc.</u>, 648 F.3d 154, 163-165 (3d Cir. 2011).

    (e) that a court's determination of whether policy ambiguity exists, which requires construction in favor of coverage, must consider whether "alternative or more precise language, if used, would have put the matter beyond reasonable question." <u>Meyer v. CUNA Mut. Ins. Soc.</u>, 648 F.3d 154, 165 (3d Cir. 2011), quoting <u>Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe) Ltd.</u>, 707 F.2d 775, 778 (3d Cir. 1983).

  Here, that easily could have been done by the inclusion of specific language in the policy excluding claims "arising from actual or alleged illegal commercial sexual acts, including, but not limited to, prostitution and/or sex trafficking."

    (f) that the terms of an insurance policy exclusion must be construed in light of the known risks of the insured's business operation, which "is the primary reason the policy

was purchased in the first place." J.H. France Refractories Co. v. Allstate Ins. Co., 578 A.2d 468, 476 (Pa. Super. 1990), aff'd in part, rev'd in part, 626 A.2d 502 (Pa. 1993).

Here, such known risks for hospitality industry insureds operating hotels and motels include the use of the rooms by guests for prostitution and sexual trafficking, claims of which against hotels and motels have skyrocketed in recent years.

3.      Plaintiff insurer's argument that the underlying complaints allege that "G.D. and N.Z. were the victims of assault" because of "the legislature's use of the word servitude" (plaintiff's brief at 19) ignores not only that one, and not all four, of the underlying claims seeks statutory liability for human trafficking, but also is a blatant violation of the foundational principle under Pennsylvania insurance coverage law that the duty to defend is determined not by "the particular cause of action that a complainant pleads" (Mutual Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)), but by "the factual allegations set forth in the complaint." State Farm Fire and Cas. Co. v. A.S., 2016 WL 7451631,*5 (W.D. Pa. Dec. 28, 2016).

Further, neither of the plaintiffs' underlying complaints include the relied upon term "sexual servitude." To the contrary, the actual factual averments made by the underlying plaintiffs aver only generally, and in conclusory manner, being "treated in an aggressive manner," and being "enticed" and "recruited" to prostitution by the apparent psychological exploitation of being "enticed" by alcohol and drugs. (Underlying amended complaints at, e.g., paragraphs 68, 77, 78.)

These actual factual averments of the underlying plaintiffs are unquestionably not free from "doubt or ambiguity," or "undetermined facts that might impact coverage," as to whether either, both, or neither engaged in prostitution because they were "assaulted" within the required "plain and ordinary" meaning of the term "assault" used in the involved exclusion.

Moreover, the possibility of liability arising <u>not</u> from assaultive violence, but from such psychological exploitation, would be entirely consistent with the reality of sexual trafficking victimization, which this court may properly consider at this juncture,[3] which can, and frequently does, occur based <u>not</u> on violence or threats of violence, but predominantly, or even exclusively, on such purely psychological manipulation as "promises of romantic love, a sense of family or access to a better life." "Human Trafficking 101," part 5 ("How does human trafficking happen in the U.S.?"), https://www.unitas.ngo/human-trafficking-101.

4. In its public policy argument, plaintiff insurer:

(a) distorts Pennsylvania law by

(i) arguing the applicability of the plainly inapposite case of <u>Erie Ins. Exchange v. Claypoole</u>, 673 A.2d 348 (Pa. Super. 1996), which did not, as here, involve claims against an insured for failing to detect and to prevent sexual abuse by another, but the insurability of claims of sexual abuse against an actual <u>perpetrator</u> of such abuse; and

(ii) ignoring the actually relevant decision of the Superior Court in <u>Board of Public Education of School District of Pittsburgh v. National Union Fire Ins. Co. of Pittsburgh, PA</u>, 709 A.2d 910 (Pa. Super. 1998),[4] which not only allowed insurance coverage of insureds, as here, allegedly liable for failing to detect and prevent the sexual abuse perpetrated by another, but unequivocally stated that to deny a defense to an insured not alleged to be the perpetrator of sexual exploitation and sued for mere negligence "would be intolerable." <u>Id.</u> at 917.

---

[3] <u>See</u> discussion at, <u>e.g.</u>, 5, 6-7 of brief in support of defendant insureds' cross-motion.

[4] While this case is distinguishable on the issue of the applicability of exclusions, it is directly, and forcefully, applicable on the issue of public policy as to the insurability of claims, as here, against an insured of failure to detect and prevent sexual abuse of a third party. <u>See</u> discussion at 11 of brief in support of defendant insureds' cross-motion.

     (iii) ignoring that, while Pennsylvania plainly has no public policy against insuring the alleged negligence of an insured in failing to detect and prevent criminal acts of third parties, it does have a strong public interest in providing coverage "when [as here] a provision in the policy is ambiguous" to "further the contract's prime purpose of indemnification."  <u>Donegal Mut. Ins. Co. v. Bauhammers</u>, 938 A.2d 286, 290 (Pa. 2007), <u>quoting</u> <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006).

     (iv) ignoring that, as recently reiterated by this Commonwealth's Supreme Court in <u>Moore</u>, Pennsylvania has an important public interest against depriving insureds of insurance coverage within their reasonable expectation where doing so would also "unnecessarily withhold compensation to tort victims."  <u>Moore</u>, <u>supra</u>, at 267.

     (v) ignoring how its already baseless public policy argument is made hypocritical by the fact that insurers, including Nautilus itself, have rushed into the insurance marketplace in droves, offering just such insurance coverage for alleged negligence in failing to detect and prevent sexual exploitation by another, which it now contends is contrary to public policy.  (<u>See</u> internet search and Nautilus application A154 (01/16) attached hereto as Exhibit A.)

## II. <u>LEGAL ARGUMENT</u>

  A. **<u>Plaintiff insurer's contentions that "G.D. and N.Z.'s Complaints allege that they were assaulted" and thus are excluded by its "all assault or battery exclusion,"[5] are contrary to Pennsylvania law.</u>**

Plaintiff insurer argues that in their underlying complaints G.D. and N.Z. "allege that they were assaulted" because "they were subjected to sexual servitude" and "they were sexually exploited, visibly treated in an aggressive manner, and experienced fear and anxiety," and

---

[5] <u>E.g.</u>, plaintiff's motion at paragraphs 63 through 67.

-7-

5342649v2

"enticed" and "recruited" into prostitution by a trafficker "using alcohol and drugs to exploit and manipulate them" (plaintiff's motion at paragraphs 14, 63).

As noted above, in so arguing the alleged applicability of its "assault or battery" exclusion, plaintiff insurer ignores that under Pennsylvania law, reiterated recently by its Supreme Court in Erie Ins. Exchange v. Moore, 228 A.3d 258 (Pa. 2020) (nowhere discussed in its moving papers), unless the underlying factual averments are free from "doubt or ambiguity," the duty to defend exists and continues "until the claim is narrowed to one patently outside the policy coverage," Moore, supra, at 265.

It also ignores, as explained above, that under controlling Pennsylvania law an insurer is "obliged" to defend its insureds as long as the complaint "might or might not" fall within the policy coverage, and until "there is no possibility" that the insurer's coverage has been triggered by allegations in the underlying complaint. Jerry's Sport Center, supra, at 541; Winslow, supra, at 668, 670.

As the actual underlying factual averments describe generally, and in a conclusory manner, being "treated in an aggressive manner," and being "enticed" and "recruited" by the apparent psychological exploitation of alcohol and drugs, they are clearly not free of "undetermined facts that might impact on coverage" as to whether either, both or neither underlying plaintiffs engaged in illegal commercial sex because they were "assaulted," within the "plain and ordinary" meaning of that term of the involved exclusion.

Further, while plaintiff insurer argues that their allegations "make clear that both G.D. and N.Z. were the victim of multiple assaults" (plaintiff's brief at 21), it fails not only to provide any definition, or allegedly commonly understood meaning, of the term "assault," but also ignores

        (i)    that under Pennsylvania law "when words of common usage are used in an insurance policy, they should be construed in their natural, plain and ordinary sense" (Meyer, supra, at 164); and

        (ii)    that the term "assault" has been defined by both this Court and the Third Circuit Court of Appeals, as requiring the actual assaultive violence of an attempt "to cause or intentionally or recklessly" cause "bodily injury to another" or an attempt "by physical menace to put another in fear of imminent serious bodily injury." Liberty Surplus Ins. Corp. v. McFaddens at Ballpark LLC, 116 F.Supp.3d 447, 458 (E.D. Pa. 2015), quoting Essex Ins. Co. v. Starlight Mgmt. Co., 198 Fed. Appx. 179, 183 (3d Cir. 2006) (quoting 18 Pa. C.S. §2701).

    Instead, plaintiff insurer argues, plainly contrary to law, that the applicability of its assault and battery exclusion to the underlying claims can be made without regard to the "plain and ordinary" meaning of the term "assault" used in its involved exclusion.

    More specifically, plaintiff insurer argues that the underlying complaints allege that "G.D. and N.Z. were the victims of assault" because of "legislature's use of the word servitude" in the Human Trafficking Statute. (Plaintiff's brief at 19.) As explained above, this ignores both (i) that the underlying plaintiffs base only one of their four counts against defendant insureds on that statute, and (ii) the principle that the duty to defend is not determined by "the particular cause of action" that the complainant pleads, but by the "factual allegations set forth in the complaint." Haver, supra, at 745; A.S. supra, at *5.

    Plaintiff insurer further seeks to avoid having its exclusion construed based on the "plain and ordinary" meaning of its terms by arguing, in a convoluted and confusing manner, that regardless of the absence of unambiguous averments of assaultive violence, "every time G.D. and N.Z. engaged in commercial sex acts with a John," "they were being assaulted because they

-9-

5342649v2

necessarily lacked the ability to consent by operation of law" under the Human Trafficking Statute (Plaintiff's brief at 19).

Plaintiff insurer relies upon the case of Kobrick v. Stevens, 2017 WL 3839945 (M.D. Pa. Sept. 1, 2017) in support of this argument that the term "assault" in its relied upon exclusion should be expanded to include "every" touching during plaintiffs' acts of prostitution by the incorporation, without reference or disclosure in its policy's terms, of the provisions as to "consent" of the Pennsylvania Human Trafficking law. (Plaintiff's brief at 18-19.)

Neither in Kobrick, nor anywhere else in Pennsylvania law, is there any support for so expanding the meaning of the term of a policy exclusion by incorporation of statutory law, not referenced in the policy, on subjects, i.e., "consent" and "sex trafficking," nowhere mentioned in the policy's terms.

Kobrick, which addressed not insurance coverage, but the legal ineffectiveness of consent for purposes of liability of one who engages in sex with a minor, clearly has no relevance to the reasonableness of construing the policy's assault and battery exclusion in such an undisclosed and unforeseeable manner.

Moreover, plaintiff insurer's proposed undisclosed incorporation of Pennsylvania statutory law into the terms of its policy would violate the reasonable "expectations" of its insureds which, as the Third Circuit Court of Appeals has explained, is "the touchstone of any inquiry into the meaning of an insurance policy." Bensalem Tp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d. Cir. 1994).

As Pennsylvania Supreme Court explained in Tonkovic v. State Farm Auto Ins. Co., 521 A.2d 920, 926 (Pa. 1987), whenever, as is frequently so, an insurer drafts policy language "which is obscure to the layman," "[c]ourts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations" of the insured.

As policy terms must be construed in their "natural, plain and ordinary sense," (Meyer, supra, at 164) and the factual averments of the underlying plaintiffs' complaints are not free from "doubt or ambiguity," as to whether either, both or neither were coerced to engage in commercial sex by assaultive violence, or threat thereof, it is respectfully submitted that, at this juncture, the assault and battery exclusion could only reasonably be construed as inapplicable.

But even if the contrary interpretation were also reasonable (and it is not), under Pennsylvania law, recently reiterated by its Supreme Court in Moore, the exclusion would be "ambiguous" and "must be construed in favor of coverage."  Moore, supra, at 267.

**B.     Plaintiff insurer's public policy argument is based on its egregious distortion of the underlying claims against defendant insureds.**

As explained in its moving papers, plaintiff insurer's public policy argument contends that as "the Underlying Actions allege" that its insureds "committed criminal violations of the Pennsylvania Human Trafficking Law," "it is against the public policy of Pennsylvania to provide insurance coverage for criminal acts."  (Plaintiff's brief at 3.)

According to plaintiff insurer's misdescription of the underlying claims,

(i)     not only the single underlying count under the Human Trafficking Statute, but also the three counts for common law negligence allege that the defendant insureds "knowingly rented rooms to G.D. and N.Z.'s sex trafficker even though they knew G.D. and N.Z. were being sexually exploited," and

(ii)    "all the counts" against the defendant insureds "are based on allegations which constitute criminal violations of the Pennsylvania Human Trafficking Law" (Plaintiff's brief at 25).

As noted above, plaintiff insurer's above distortion of the underlying claims against its insureds seizes upon the use of what is a standard, nearly universally used, pleading format, in an effort to evade the controlling principles of Pennsylvania law, including, (i) that the duty to

-11-

5342649v2

defend exists and continues "until the claim is narrowed to one patently outside the policy coverage" (Moore, supra, at 265), and (ii) that in determining the duty to defend, underlying complaints are to be "liberally" "construed in favor of coverage." Moore, supra, at 265-267.

What is worse, plaintiff insurer ignores the explicit alternative and contrary averments of the negligence claims, which seek liability <u>not</u> on defendant insureds having "knowingly rented rooms… even though they knew G.D. an N.Z. were being sexually exploited" (Plaintiff's brief at 25), but on failing "<u>to recognize that Plaintiff was being sex trafficked</u>" (underlying amended complaints at paragraph 99) (emphasis added.)[6]

Clearly, the "possibility" of liability of defendant insureds, at this juncture, cannot be foreclosed on conduct that is in no sense reprehensible, consisting of so failing "to recognize that Plaintiff was being sex trafficked," and alleged failure of policies and procedures in connection therewith.

Indeed, the underlying "lack of awareness" claims in this matter specifically include allegedly "failing to detect and respond to commercial sex activity and human sex trafficking at the Neshaminy Inn," based on failing to "adequately control access" to the premises; failure to provide "protocols," "policies," and "guidelines" and failing to "utilize" and "maintain" "surveillance equipment" (paragraph 158 of the underlying amended complaints).

---

[6] Plaintiff insurer is similarly misleading in contending that in a now mooted declaratory judgment action, supposedly involving "nearly identical facts," public policy was found to preclude insurance coverage. (Plaintiff's brief at 13.) That mooted decision involved a predecessor declaratory judgment action involving the claims of E.B.'s initial, now amended, complaint, against defendant insureds. That earlier declaratory judgment action was not on "nearly identical facts," as on E.B.'s initial, subsequently amended complaint, she alleged being forced to engage in prostitution "at gunpoint," and that defendant insureds knowingly profited by charges of above standard room rates. That decision was mooted by the filing by E.B. of a substantially different amended complaint, and plaintiff insurer's filing of the now other pending declaratory judgment action based thereon. Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc., No. 20-CV-000289 (E.D. Pa.). That decision as to public policy would have no precedential or binding impact on this court because, among other reasons, the public policy finding was not affirmed on appeal, even were it not distinguishable on its facts, as it is. See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 45 (2d Cir. 1986) (if an appellate court considers only one of a lower court's alternative bases for its holding, affirming the judgment without reaching an alternative basis, only the basis that is actually considered can have any preclusive effect in subsequent litigation.)

5342649v2

That underlying claims include as a potential basis of liability such purely negligent, non-reprehensible conduct is in no sense surprising. To the contrary, as noted above, that is consistent with the similar sex trafficking cases exploding nationwide against motels and hotels operations, based on the "lack of awareness" and "hotel staff and guests" not realizing "that trafficking is happening, or how to recognize the signs."

Pennsylvania undeniably has no public policy against the continued furnishing by Nautilus of a defense where, as here, the potential liability of its insureds cannot be foreclosed based on such alleged failures of policies and procedures and lack of awareness of third party criminality. See Board of Public Education of School District of Pittsburgh v. National Union Fire Ins. Co. of Pittsburgh, PA, 709 A.2d 910 (Pa. Super. 1998).

As previously explained, plaintiff insurer's arguments against defense coverage seek far reaching adverse consequences not only to the Commonwealth's hospitality industry insureds, but also to the victims of sexual trafficking. It is those arguments that, in fact, are contrary to public policy. This is so for two reasons.

First, Pennsylvania has a strong public interest in favor of providing insurance coverage within the reasonable expectation of its insureds to further the "contract's prime purpose of indemnification," Donegal Mut. Ins. Co. v. Bauhammers, 938 A.2d 286, 290 (Pa. 2007), quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006).

Second, as significantly on the particular facts of this case, Pennsylvania also has an "important" public interest, recently reiterated by its Supreme Court, against depriving insureds of reasonably expected coverage that would

> "unnecessarily withhold compensation to tort victims." (Moore, supra, at 267.)

Plaintiff insurer makes the further argument on public policy that the "average person" "would cringe at the suggestion that he was paying for coverage for liability arising out of the sexual servitude of a human being." (Plaintiff's brief at 25.) This is not only disingenuous, but hypocritical.

That there is a compelling public interest nationwide in favor of compensation of victims of sexual abuse and exploitation is undeniable. For example, it was recently reported that the New York State Department of Financial Services advised insurers that they "should be prepared to promptly approve coverage," "of child sex abuse claims" when applicable, "or face state action" (Law.com September 12, 2019, link to New York Law Journal article).

Moreover, as set forth above, insurers such as Nautilus have rushed into the marketplace in droves offering the very sort of insurance coverage for negligence in connection with sexual abuse by third parties, which Nautilus now cynically argues is contrary to public policy.[7]

---

[7] For example, an internet search indicates that coverage for sexual misconduct and molestation claims is widely available, including from Nautilus. See internet search pages attached hereto as Exhibit A.

.

-14-

### III.   CONCLUSION

It is respectfully submitted that plaintiff's motion should be denied and defendant insureds' cross-motion granted.

Date:  October 20, 2020

    */s/ Jeffrey R. Lerman*
    Jeffrey R. Lerman, Esquire
    Glenn F. Rosenblum, Esquire
    Montgomery, McCracken, Walker & Rhoads, LLP
    1735 Market Street, 19th Floor
    Philadelphia, PA  19103
    (215) 772-1500 (telephone)
    (215) 772-7620 (facsimile)

    *Attorneys for Defendants*
    *Motel Management Services, Inc. d/b/a Neshaminy Inn,*
    *The Mary Etzrodt Trust and NI45, LLC*

5342649v2

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2020, one true and correct copy of the foregoing **Answer to Plaintiff Insurer's Motion for Judgment on the Pleadings and Brief in Opposition to Plaintiff Insurer's Motion for Judgment on the Pleadings** will be served via the court's electronic filing system upon:

> Anthony L. Miscioscia, Esquire
> Konrad Krebs, Esquire
> Justin K. Fortescue, Esquire
> White & Williams LLP
> 1650 Market Street, Suite 1800
> Philadelphia, PA  19103
>
> Nadeem A. Bezar, Esquire
> Emily Marks, Esquire
> Kline & Specter, P.C.
> 1525 Locust Street
> Philadelphia, PA  19102

Date:  October 20, 2020              */s/ Glenn F. Rosenblum*
                                     Glenn F. Rosenblum

5342649v2